Mrs. Jimmie Lue WILLIAMS,
Plaintiff-Appellant,

v.

Douglas E. KELLEY and Floyd Carlton McIntyre, Defendants-Appellees.

No. 77-2418.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1980.

---

Robert H. Stroup, Atlanta, Ga., for plaintiff-appellant.

Joe Salem, Atlanta, Ga., for defendants-appellees.

Before GODBOLD, HILL and POLITZ, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In the early morning of November 29, 1973, Virgil Williams, Jr. was lawfully arrested and taken to the Atlanta Police station. Apparently intoxicated, Williams was violent and unruly. At the police station, Williams successfully refused to be handcuffed. Once inside, he resisted efforts to take his fingerprints, and an ensuing scuffle was subdued only through the efforts of at least four officers. Williams was forcibly carried to a locked holding room, where he was chained to a steel bench. Williams somehow broke the shackle loose from the bench and pounded the room door; his fury subsided when an officer came in to talk. After some further unsuccessful efforts to take his fingerprints, Williams was escorted to the third floor of the station house, where he was placed in the custody of the defendants.

Defendant McIntyre led Williams to a telephone room, and left him there for several minutes. McIntyre returned to the telephone room and requested that Williams go peaceably to his cell. Williams, who then was lying on a bench, did not respond. McIntyre twice tried to have Williams sit up on the bench, but each time Williams lay back down. Finally, McIntyre attempted to lift Williams off the bench by pulling on Williams' shirt. Williams suddenly twisted out of his shirt, and stood bare chested facing McIntyre, menacing him with clenched fists. At this point defendant Kelley, knowing that McIntyre was unarmed, approached Williams from behind and grasped him in a choke hold. Both men crashed to the floor and Kelley's hold was broken. Kelley then applied a second choke hold, and commenced carrying Williams out of the telephone room while defendant McIntyre held Williams' legs. Before the men had gone ten feet, however, Williams lost consciousness; he subsequently died despite defendants' efforts to revive him. The apparent cause of death was strangula-

tion, although some expert testimony pointed to ventricular fibrillation (cardiac arrest).

Plaintiff, Williams' mother, sued Kelley and McIntyre for wrongful death. She claimed that, as a matter of Georgia law, defendants were liable for negligence and battery. Since defendants were government employees, however, plaintiff sought no relief under state law but rested exclusively on 42 U.S.C. § 1983 (1976). Even so, plaintiff evidently persuaded the district court that state law governed the extent of defendants' liability, since the court purported to judge their conduct by the standard announced in *Thomas v. Williams*, 105 Ga.App. 321, 124 S.E.2d 409 (1962) (outlining custodial duties owed prisoners). Following a bench trial, the district court entered judgment in favor of defendants. *Williams v. Kelley and McIntyre*, No. C75-1685A (N.D. Ga., filed April 29, 1977). Plaintiff appeals. Although we disagree with the district court's legal approach, we affirm its judgment.

■ The district court correctly observed that § 1983 "should be read against the background of [common law] tort liability." *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). But while the statute may thus be analyzed as "a species of tort," *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976), "[v]iolation of local law does not necessarily mean that federal rights have been invaded." *Paul v. Davis*, 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), quoting *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (plurality opinion). *See, e.g., Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1080–81 (3d Cir. 1976); *Jones v. Marshall*, 528 F.2d 132, 137 (2d Cir. 1975). Section 1983 plaintiffs must prove both (1) deprivation of a federal constitutional or legal right, *see Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980), quoting *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), which (2) resulted from "the sort of abuse of government power that is necessary to raise an ordinary tort by a government

agent to the stature of a violation of the Constitution." *Turpin v. Mailet*, 579 F.2d 152, 169 (2d Cir.) (concurring opinion), *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978), quoting Note, *Damage Remedies Against Municipalities for Constitutional Violations*, 89 Harv.L.Rev. 922 (1976). *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1977) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). This latter element renders federal rights protection far less extensive than that afforded by the common law of battery and negligence. *See Paul v. Davis*, 424 U.S. 693, 698, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976) (dictum); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973). By focusing exclusively on whether defendants breached state law duties, the district court erred in plaintiff's favor.

■ The deceased's interest in life plainly was of constitutional dimension. U.S. Const. amend. XIV, § 1. We thus must ask whether defendants' conduct—independent of its lawfulness or unlawfulness at state law—was sufficiently egregious as to be "constitutionally" tortious. This question often is resolved under the banner of qualified official immunity, which looks principally to the actors' good faith. *See, e.g., Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Cruz v. Beto*, 603 F.2d 1178 (5th Cir.1979). Quite apart from the matter of immunity, however, the constitutionality of defendants' conduct rests on

> such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.) *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973), quoted in *Hamilton v. Chaffin*, 506 F.2d 904

(5th Cir.1975). *Cf. Reeves v. City of Jackson*, 608 F.2d 644, 650 (5th Cir.1979) ("warrantless and malicious arrest based on no probable cause"); *Tolbert v. Bragan*, 451 F.2d 1020, 1020 (5th Cir.1971) (per curiam) ("[s]evere physical abuse of prisoners by their keepers without cause or provocation"). Viewing defendants' conduct in this light, we find at most an arguably negligent performance of lawful custodial functions. *Cf. Diamond v. Thompson*, 364 F.Supp. 659, 667 (M.D. Ala. 1973) (F. Johnson, J.), *aff'd per curiam*, 523 F.2d 1201 (5th Cir.1975) (prison officials may use "reasonable force to move inmates"). In the circumstances, however, their conduct simply did not constitute "the sort of abuse of government power" that is cognizable under § 1983:

> Williams' resistance on the third floor began passively, [but] became violent when Williams faced McIntyre with clenched fists. Fearing that Williams was about to attack McIntyre, Kelly [sic] acted reasonably in attempting to get Williams under his physical control. Thereafter, Williams' strength revealed itself as he was able to release himself from Kelly's [sic] hold. The officers' efforts at that point were clearly made in order to protect their own safety, as well as that of Williams and the third floor in general. . . .
>
> . . . [T]he situation necessitated spontaneous reaction, and defendants acted without the benefit of hindsight. The chokehold had never caused a death or serious injury in the history of the Atlanta Police Department, and for that reason perhaps defendants were not adequately warned of its potential dangers. In any event, it is clear that the hold was not used to inflict harm on Williams, but was applied in a good faith effort to maintain or restore discipline.

*Williams v. Kelley and McIntyre*, No. C75–1685A (N.D. Ga., filed April 29, 1977), at 5–6, *quoting Johnson v. Glick*, 481 F.2d 1028 (2d Cir.) (Friendly, J.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973). These findings are not clearly erroneous. Fed.R.Civ.P. 52(a). We have no occasion to decide whether, as a matter of state law, defendants' conduct was lawful or unlawful. We hold only that, in dealing with Williams, defendants did not act unconstitutionally.

For the reasons set forth above, the judgment is

AFFIRMED.