**Lester L. BOIHEM, Jr.**

v.

**DRAINAGE & SEWERAGE DEPART-
MENT OF JEFFERSON
PARISH, et al.**

Civ. A. No. 80–3910.

United States District Court,
E.D. Louisiana.

March 11, 1983.

Gerard Meunier of Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiffs.

Gerard M. Dillon of Dillon & Cambre, New Orleans, La., for defendants.

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the motion of the defendants[1] for summary judgment. Following oral argument, the motion was taken under submission; having considered the memoranda, the record, and the law applicable to this motion, the Court grants the motion of defendants for summary judgment for the following reasons.

Plaintiffs in this suit are "owners of property adjacent to and/or contiguous with an open drainage canal designated as the 'Suburban Canal' in the Parish of Jefferson (East Bank), State of Louisiana."[2] It is uncontested that defendants own and operate Suburban Canal as a drainage canal in Jefferson Parish, and that a legal servitude exists in defendants' favor on property owned by plaintiffs along this canal. Plaintiffs allege that as a result of the operation of the canal, damage has been caused to the property adjacent to the canal due to soil and bank erosion, and that the conduct of the defendant Parish and governing bodies and government officials in allegedly failing or refusing to avoid or minimize the damage to plaintiffs' property has deprived plaintiffs of due process of law, violated their guarantee of equal protection, and constitutes a conspiracy to so deprive plaintiffs of their property rights under 42 U.S.C. § 1983 and 1985(3).[3] Plaintiffs addi-

---

1. Drainage & Sewerage Department of Jefferson Parish; Prat P. Reddy, as Director of Drainage Department of Jefferson Parish (East Bank); Herb Miller, as Director of Sewerage Department of Jefferson Parish (East Bank); Department of Safety, Division of Regulatory Inspection of Jefferson Parish; John W. Sanders, as Chief of Department of Safety, Division of Regulatory Inspection of Jefferson Parish; Jefferson Parish; and Joseph S. Yenni, as President of Jefferson Parish.

2. Plaintiffs' complaint, Par. 2.

3. 42 U.S.C. § 1983, Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1985, Conspiracy to interfere with civil rights

tionally allege violations of Louisiana law which they seek to append to their federal claims via the application of pendent jurisdiction.

Defendants do not dispute that there has been sloughing or erosion of the banks of Suburban Canal for many years and, at least, prior to October 4, 1978.[4] However, defendants claim that summary judgment is proper on the basis that plaintiffs have failed to support their claims of constitutional violations under 42 U.S.C. § 1983 and 1985 in that plaintiffs have not pointed to any custom or usage of the Parish and its departments under which the Parish and its officials conspired to deprive plaintiffs of their constitutional rights. Plaintiffs agree that a cause of action will lie under 42 U.S.C. § 1983 if action has occurred under "color of law," which phrase embraces "custom or usage."[5]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117, 119 (5th Cir.1982). The party seeking summary disposition must demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law. *Id.* Defendants have met this requirement.[6] The basic facts are undisputed. Anton Pilney, Parish Councilman from 1964 to 1976 of the district which included the Suburban Canal, received complaints from some of the residents along the canal in 1975. In response to these complaints, Pilney went out to the neighborhood and contacted various homeowners in a 3 block radius about setting up a meeting to work out the problem. One of the owners, Mr. Sabella, volunteered his home for the meeting and the others were told to contact him for the time and place of the meeting.[7] There is some dispute as to how the meeting was organized and arranged; Mr. Sabella's recollection was that Pilney arranged the meeting and was to mail a notice of it to Sabella's neighbors.[8] Ray Condon, one of the Parish representatives who attended the meeting, recalled that the meeting was promoted by Sabella and another resident, Fred Ison, and that there was no advertisement of the meeting.[9]

The meeting took place in the fall of 1975 at Sabella's home with Condon, Pilney, and four or five property owners in attendance. Condon, as Director of Drainage and Sewerage for Jefferson Parish, explained that

---

Depriving persons of rights or privileges (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injury any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done,

any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

4. Defendants' statement of material facts, Par. 1 and 2.

5. Plaintiffs' memorandum in opposition, p. 3.

6. Plaintiffs' response to defendants' statement of material facts was merely a listing of legal conclusions. Material facts will be deemed admitted unless controverted. Local Rule 3.10.

7. Pilney Deposition at 15–17, 19–21.

8. Sabella Deposition at 8–10.

9. Condon Deposition at 13–15, 20, 30–31.

the Parish did not have the funds to close the canal, and that anything which could be done at the time could only be accomplished through the participation of the property owners.[10] After the meeting, Sabella, Pilney and Ison were advised by Condon as to estimates for a method of using "rip-rap" bags to prevent further sliding of the banks of these property owners rather than bulkheads. Apparently, the "rip-rap" bags were to be used as a test to see if they would suit the purpose. While the method had been successful in other parts of the state, it had not previously been employed in Jefferson Parish.[11] The Parish proposed to absorb two-thirds of the cost, and the individual owner one-third; the Parish's portion included the labor and material.[12] No other owners were advised of the availability of this method, according to Condon, as it was unnecessary to notify them until the "rip-rap" method was proved a success.[13] The method was not a success; the bags were removed and it was decided that timber bulkheads would stabilize the erosion. Another meeting was called in mid-year, 1976 with Ison and Sabella in attendance. A third meeting was then organized by Pilney as a result of person door-to-door contact by him; apparently this was not an unusual method of advertising these meetings.[14] The third meeting at the Sabella home was attended by Ison, Sabella, Pilney, Condon, and Ethel Harris. The property owners were advised that the money they had submitted in anticipation of participation of the "rip-rap" method would be used to defray the cost of placing the timber bulkheads behind their properties. The three property owners in attendance, Ison, Sabella and Harris, agreed; the retainer walls were built during 1976 and are still in place.[15]

It is undisputed that there were no other incidents where the Parish had constructed bulkheads along the banks of any canal with property owners contributing toward payment of a portion of the cost thereof.[16] The Parish was in a financial position to build additional bulkheads at the time that the 1976 bulkheads were built for Ison, Sabella and Harris, but relied on property owners to come forward on their own initiative to request a bulkhead, as the budget was limited to the extent that the Parish could not seek out a "couple of million dollars' worth of work, besides maintaining the existing system."[17] It is the testimony of Lester Boihem, one of the plaintiffs herein, that his property was collapsing and sliding in 1975, that he observed the placement of rip-rap bags on the opposite side of the canal, but was not informed by the Parish as to the program, and was not invited to attend any meetings to discuss either the rip-rap bag method or any other solution to the problem with the canal. Shortly after the installation of the bulkheads, Boihem called Condon and asked if the Parish would assist him in installing a timber bulkhead along his property; Condon suggested that it would be possible, but that he was advised that his contribution would be between $1500 and $2000, which figures were later revised to $24,000.[18] Condon's testimony is to the effect that in his correspondence with Boihem, Boihem was advised that his contribution would depend on the frontage of his property; the estimate was made based on the contributions made by others and broken down to a per-foot basis.[19]

10. *Id.,* at 20–22.

11. *Id.,* at 28; Sabella Deposition at 22.

12. Pilney Deposition, Exhibit 2.

13. Condon Deposition at 31.

14. *Id.,* at 39.

15. Harris Deposition at 22–24, 46; Ison Deposition at 10–11, 23; Sabella Deposition at 21, 24–25.

16. Defendants' statement of material facts, Par. 11.

17. Condon Deposition at 44–45.

18. Affidavit of Lester Boihem.

19. Condon Deposition at 64–65.

Plaintiffs argue that while some owners continue to experience damage to their property, other owners have received assistance from the Parish in remedying the erosion problem. Plaintiffs submit that this evidence "dramatically supports their argument that the constitutional guarantee of equal protection under law has been flouted in this case."[20] They contend that similarly situated citizens have been treated in drastically different ways, and that there is sufficient evidence of a custom, usage and practice whereby the Parish has created an inequity through its authorized representatives.

■■■ Defense of a proper summary judgment motion requires more than a mere denial. The party opposed to the motion "is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *Union Planters Nat. Leasing v. Woods, supra* at 119. The record herein reflects no such probative evidence to demonstrate that the Parish and/or its authorized representatives operated in a manner to deprive the plaintiffs of any constitutional property rights. Section 1983 plaintiffs must prove both (1) deprivation of a federal constitutional or legal right ... which (2) resulted from "the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the stature of a violation of the Constitution." *York v. City of Cedartown,* 648 F.2d 231, 232 (5th Cir.1981), citing *Williams v. Kelley,* 624 F.2d 695, 697 (5th Cir.1980). The undisputed facts in this case suggest no such abuse of governmental power. The record reflects that the Parish has been active in planning and constructing bulkheads along various drainage canals in Jefferson Parish, including Bonnabel Canal, which was federally funded; Keyhole Canal in Westwego, which was completed entirely with State funds; and Soniat Canal, a project again funded by the State. As a result of a 1980 bond issue, $80 million dollars was approved by the voters for ex-

panding and renovating the thirteen pumping stations in Jefferson Parish. This project includes doubling the capacity of the Suburban Canal pumping station, which increases the velocity of water being pumped through the canal. To handle this increase, the Parish is proposing to pave the canal, although the money is not yet available to perform this project. However, there is presently before the State Legislature an act to create a statewide drainage district, and an act has been submitted to the state which specifies Suburban Canal as being of the highest priority for that district.[21]

■■■ The record does reflect that the only people who were offered the opportunity to have bulkheads built were those property owners along Suburban Canal who had been in attendance at the meetings at Sabella's, and that no notice was mailed to any of the other property owners along the canal. However, in view of the ongoing attempts by the Parish to solve the drainage problems, not only along other canals, but along Suburban Canal as well, the mere fact that some property owners were not given notice of the program offered to others, is not evidence of a Constitutional violation that would bring this suit within the purview of 42 U.S.C. 1983. While liability may be imposed on municipalities for deprivations of constitutional rights undertaken pursuant to municipal policy, whether officially promulgated or authorized by custom, the failure to give notice at best constitutes an isolated incident which does not indicate the kind of systematic abuse required for a 1983 cause of action. *Berry v. McLemore,* 670 F.2d 30 (5th Cir.1982). Although the Parish may have been negligent, its conduct has not been shown to be one of deliberate indifference to constitutional violations. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■■■ Accordingly, defendants' motion for summary judgment is granted.[22] As

---

20. Plaintiffs' memorandum in opposition at 16.

21. Russo Deposition at 26–32; Condon Deposition at 4–12, 22.

22. As the Court finds no actionable conduct on the part of the Parish, it also finds no basis for a 1983 cause of action against the individual defendants named by plaintiffs in their respec-

the Court finds no continuing basis for federal jurisdiction, and plaintiffs' remaining grievances against the Parish address state claims and law, the pendent claims of plaintiffs are hereby dismissed. The Clerk of Court is directed to enter judgment in accordance herewith.

tive offices. Nor does it find an actionable claim under Section 1985 as the allegations of conspiracy are conclusory in nature and unsupported by any facts. Additionally, the Court rejects defendants' argument that this action is prescribed by La.R.S. 9:5624 as this statute is not applicable to a claim for damages resulting from the negligent acts or omissions of the Parish, or its agents or employees. *Perkins v. Simon*, 265 So.2d 804 (La.App. 3rd Cir.1972).