**Jay T. BROWN, Plaintiff–Appellee,**

v.

**Deputy Constable John GLOSSIP, et al, Defendants–Appellants.**

No. 88–2908.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1989.

Scott Lyford, Galveston, Tex., for defendants-appellants.

Gene Hagood, Britt, Todd, Hagood & Clements, Alvin, Tex., for plaintiff-appellee.

Before GEE, GARZA, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Deputy Constable John Glossip arrested Jay Brown for reasons not explained in the record before us. Mr. Brown sued Glossip to redress the allegedly unconstitutional use of excessive force. The only issue before us is whether we should uphold Glossip's qualified immunity defense based on the insufficiency of Brown's pleadings to controvert the possibility that Glossip may be entitled to immunity. The district court denied Glossip's motions to dismiss and to stay discovery. Interlocutory appeal of these orders is allowed. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985); *Geter v. Fortenberry*, 849 F.2d 1550, 1552 (5th Cir. 1988). We reverse and remand with conditions.

Brown's original petition provides but the barest description of Deputy Constable Glossip's arrest:

On or about the 5th day of February, 1987, Precinct #3 Deputy Constable John Glossip, approached the Plaintiff's mother's house located in Honeysuckle Street in La Marque, Galveston County, Texas. Your Plaintiff was present at that house at that time but the Plaintiff's mother was not. While there, the Defendant, Deputy Constable John Glossip, among other things, forcibly twisted the Plaintiff's right arm behind his back while in the process of handcuffing the Plaintiff. During this procedure, the said Defendant twisted and pushed the Plaintiff's arm to such a position that Plaintiff's arm was injured internally that resulted in the injuries and required the surgery as more fully set out herein. The incident made the basis of this lawsuit occurred within the territorial limits of Galveston County, Texas.

Elsewhere in the petition, Brown alleges that he was neither violating any state or local laws when arrested, nor did he engage in any assaultive behavior. He alleges there was no probable cause for arrest as he had committed no crime and broken no law. He concludes that Deputy Constable Glossip's conduct in injuring him was entirely unjustified and constituted an unreasonable and excessive use of force, violating 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and the fourth, eighth and fourteenth amendments. Pendent state claims, not of interest here, were also asserted.

Perhaps because the district court denied Glossip's motion to stay discovery at the same time that it rejected his motion to dismiss, placing both orders on appeal concurrently, we are without the benefit of discovery to add flesh to Brown's skeletal allegations of wrongdoing.

Our conclusions may readily be summarized in three propositions. First, pursuant to the governing law of unconstitutional excessive force, as it was in our Circuit and will be following recent decisions of the Supreme Court and our Court sitting *en banc*, Brown's allegations state a cognizable cause of action. Second, because the recently decided authorities clearly contemplate the existence of a defense of qualified immunity for law officers engaged in making an arrest, we should likewise require plaintiffs in excessive force claims to plead with specificity why that defense is unavailable in a given case. Third, we reverse and remand this case to the trial court for further pleading that may overcome the defendant's immunity defense. The first two of these propositions require some elaboration.

At the time Brown filed his complaint, the law of our Circuit pertaining to the use of excessive force by police officers was clearly established. *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1985), and progeny had followed a tripartite test, founded upon the fourteenth amendment's concept of substantive due process:

(i)f the state officer's action caused *severe injuries*, was *grossly disproportionate* to the need for action under the

circumstances, *and was inspired by malice rather than merely careless or unwise excess of zeal* so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983. (emphasis added)

Our occasional deviations from this holding,[1] concerning the degree of severity of injury that might justify relief, eventually caused our Court to reconsider *Shillingford en banc. Johnson v. Moral,* 843 F.2d 846, vacated pending *en banc* rehearing, 843 F.2d 849, *en banc* opinion, 876 F.2d 477 (5th Cir.1989). Assuming that *Shillingford's* severe injury standard be taken literally, and that a plaintiff alleged a severe injury during an arrest, then the other two requirements, malice and gross disproportion between the officer's need for action and the harm inflicted, could be inferred in a given case. If, therefore, Brown's injury is "severe" under *Shillingford,* and if no immunity defense was available to Glossip, then Brown's pleadings are sufficient. We believe that the allegations of an internal arm injury that required surgery in the past and will do so in the future and has caused Brown to suffer a loss of earning capacity sufficiently plead a severe injury as understood by *Shillingford.*[2]

The law of unconstitutional excessive force did not, however, stand still after Brown filed this lawsuit. Very recently, the Supreme Court has held that the fourth amendment governs claims of excessive force during arrest, and that, giving deference to the need for split-second decision making by police officers in often dangerous situations, their actions must be judged by standards of objective reasonableness.

*Graham v. Connor,* — U.S. —, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, two of *Shillingford's* components, subjective malice and gross disproportion of the officer's conduct, have been modified by *Graham's,* fourth amendment standard. In the wake of *Graham,* our Court has further clarified that an injury actionable under a fourth amendment standard must be "significant." *Johnson v. Morel,* 876 F.2d at 480. The precise difference between the new constitutional standards and those previously espoused by our Court remain to be explored. It is clear, however, that the new constitutional test is not more onerous than that of *Shillingford. Mutatis mutandis,* the sufficiency of Brown's allegations under *Shillingford* renders them sufficient to state a constitutional claim pursuant to *Graham.*

█ An additional wrinkle derives from the now-governing authorities. Although no claim of qualified immunity was raised in *Graham,* the Supreme Court expressly contemplated its application in excessive force Fourth Amendment cases.[3] 109 S.Ct. at 1873 n. 12. The Supreme Court cited *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) in its discussion of the availability of qualified immunity. We can discern no principled distinction between the availability of qualified immunity as a defense to unreasonable searches and unreasonable seizures under the fourth amendment and as a defense to an excessive force claim also grounded in the fourth amendment. We are squarely presented with the question in this case, and we therefore hold that qualified immu-

---

**1.** *See, e.g., United States v. Bigham,* 812 F.2d 943 (5th Cir.1987); *Tubwell v. Moody,* 816 F.2d 675 (5th Cir.1987).

**2.** If *Shillingford* also permitted an immunity defense, we would need to assess the sufficiency of Brown's pleadings for that purpose. Our prior authority suggests that some type of immunity defense might be available to officers confronted with a *Shillingford* lawsuit. *See, Jamieson v. Shaw,* 772 F.2d 1205, 1211 n. 9 (5th Cir.1985). *Compare Stevens v. Corbell,* 832 F.2d 884 (5th Cir.1988) (dicta suggests that "the defense of qualified immunity is unavailable to a police officer who the plaintiff has alleged thus used excessive force." *Id.* at 890). We observed

in *Coon v. Ledbetter,* 780 F.2d 1158, 1164 (5th Cir.1986), a "coincidence of the inquiries into whether there was excessive force and whether there was good faith," indicating the logical inability of the two propositions to co-exist. Because *Shillingford* has been superseded, we need not parse this issue further.

**3.** The Supreme Court stated that "the officer's *objective* 'good faith'—that is, whether he could reasonably have believed that the force used did not violate the Fourth Amendment—may be relevant to the availability of the qualified immunity defense to monetary liability under § 1983." *Id.* (emphasis in original).

nity is available as a defense to monetary liability for an objectively unreasonable use of excessive force under the Fourth Amendment.

■ This issue had previously been unsettled in our decisions. *See* n. 2, *supra*. We have held repeatedly, however, that where the defense of qualified immunity may be raised, a plaintiff is required by his pleadings to state facts which, if proved, would defeat a claim of immunity. *Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988); *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985) [4]; *Jacquez v. Procunier*, 801 F.2d 789 (5th Cir.1986). Henceforth, a plaintiff who files a lawsuit predicated on the use of excessive police force contrary to the fourth amendment must comply with these authorities and state facts sufficient to overcome a potential qualified immunity defense. This will require an elaboration on the circumstances of the plaintiff's arrest that goes beyond those averred thus far by Brown. The Supreme Court noted in *Graham* that "a fact-finder may consider, along with other factors, evidence that the officer harbored ill-will toward the citizen." 109 S.Ct. at 1873 n. 12. This does not reintroduce malice as a substantive component of plaintiffs' excessive force claims, but malice, or its absence, is relevant to an officer's good faith qualified immunity. Additionally, whether a warrant was employed, whether the plaintiff resisted arrest or was armed, whether more than one arrestee or officer was involved, whether the plaintiff was sober, whether other dangerous or exigent circumstances existed at the time of arrest, and on what charges plaintiff was arrested would be pertinent circumstances in addition to those pleaded here.

The purpose of requiring such allegations is, of course, to permit the trial court, and our court on review, if necessary, to implement a qualified immunity defense "at the earliest possible stage of a litigation." *Anderson v. Creighton*, 107 S.Ct. at 3042 n. 6. As the Supreme Court has instructed in *Mitchell v. Forsyth*, 105 S.Ct. at 2816, qualified immunity means immunity from having to stand trial, not simply immunity from monetary liability. *See also Geter v. Fortenberry*, 849 F.2d at 1552 (" 'immunity' in this instance means immunity from suit, not simply immunity from liability"); *Elliott v. Perez*, 751 F.2d at 1479 ("those entitled to official immunity should be free not only from ultimate liability, but also from trial, and the oft-time overwhelming preliminaries of modern litigation"). This means that unless the pleadings sufficiently allege that the defendant reasonably should have known that his particular actions violated clearly established federal law, then summary judgment should be granted.[5] The protection afforded by qualified immunity not only provides an escape from the expense and vexation of litigation, but also protects public officials from the chilling effect which potential litigation has upon the exercise of their duties.

■ In overcoming the qualified immunity defense, it is not enough for the plaintiff to allege that the government official violated a clearly established right in the generalized sense for that "would ... convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 107 S.Ct. at 3038–39. Instead, the Supreme Court has instructed that: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* In the wake of *Graham*, the plaintiff here must demonstrate that no reasonable police

---

**4.** Judge Brown's opinion in *Elliott v. Perez* explains the need for particularity in pleading to overcome a qualified immunity defense and details the devices district courts may apply to ensure compliance with this requirement. Judge Brown referred to "An Absolute Need for Trial Courts to Demand Clear Pleading." 751 F.2d 1476 (capitals in original heading). There is no reason to demand anything less in a case alleging use of excessive force under the fourth amendment.

**5.** If the facts are in dispute regarding qualified immunity, the district court may allow limited discovery on the facts pertinent to that issue. *Anderson v. Creighton*, 107 S.Ct. at 3042–43 n. 6; *Elliott v. Perez*, 751 F.2d at 1477–82.

officer could have misunderstood that Glossip's particular actions which caused his injuries violated federal law.

Brown's case was filed before *Shillingford* was modified by *Graham* and *Johnson*. It is clear both that a pleading to avert Glossip's immunity defense is now required and that Brown has not made such a pleading. For this reason, we will reverse and remand the district court's orders denying qualified immunity with instructions to permit Brown to plead further.

The orders of the district court are RE-VERSED and the cause is REMANDED for further proceedings in accordance herewith.