Theodore DISMUKES and Pinkie
Stratton, Plaintiffs,

v.

Bruce E. HACKATHORN [1]; Starkville
Police Department; Sergeant Todd
Salmon, in his individual capacity and
as a member of the Starkville Police
Department; Bud Maxey, in his indi-
vidual capacity and as the Chief of the
Starkville Police Department City of
Starkville; R.L. McDavid, as the Mayor
of the City of Starkville; Bob Smith,
Ed Buckner, Mary Lee Beal, Wendall
Gibson, Emmett Smitherman, Melvin
Rhodes, and Harold Williams, as Alder-
men of the City of Starkville, Defen-
dants.

Civ. A. No. EC 90–149–D–O.

United States District Court,
N.D. Mississippi, E.D.

Aug. 13, 1992.

---

**1.** Pursuant to an order entered by U.S. Magis-
trate J. David Orlansky, Bruce E. Hackathorn
was dismissed as a party defendant. *Dismukes
v. Hackathorn,* Civ.Act. No. EC90–149–D–O
(N.D.Miss. February 27, 1990) (order granting
motion to dismiss defendant Hackathorn).

William E. Ready, Jr., Meridian, Miss., for plaintiffs.

William T. Siler, William C. Brabec, T. Keith Ball, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

A high-speed police pursuit provides the impetus for this civil rights action, framed within 42 U.S.C. § 1983. Plaintiffs allege excessive force was used to apprehend a traffic offender in violation of their Fourth and Fourteenth Amendment rights.[2] In response, defendants move this court for summary judgment pursuant to Rule 56 of Federal Rules of Civil Procedure. Based on its review of the evidentiary materials supporting and opposing the motion, the

court concludes no reasonable juror could find plaintiffs are victims of a constitutional deprivation.[3] Set out below is the court's opinion.

### I. *Summary of the Facts*

Defendant Todd Salmon, a Starkville police officer, observed the driver of a 1988 Chevrolet Beretta, Bruce E. Hackathorn, pass on a double yellow line, travelling at eighty m.p.h. in a forty m.p.h. zone.[4] Thereupon, a high-speed pursuit of the traffic offender through a largely residential area ensued for ninety seconds. The chase ended when Hackathorn, disregarding a red traffic light, collided with a motor vehicle containing plaintiffs.[5] As a result of the collision, plaintiffs sustained personal injuries and property damage. The Starkville Police Department has no official policy regarding high-speed police pursuits; the matter is left to the discretion of the individual officer. Nothing in the facts indicates Starkville has a history or pattern of conducting high speed chases that end in traffic accidents.

### II. *Legal Discussion*

■ Section 1983, in and of itself, creates no substantive rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791, 800 (1985) (citing *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The mere assertion that defendants violated a plaintiff's rights under § 1983 is inadequate. *Easterling v. Glennville*, 694 F.Supp. 911, 917 (S.D.Ga.1986). It is evident from the statutory language [6] that § 1983 merely serves as a vehicle for vindicating federal rights arising from the Constitution or laws of the United States.

---

2. Pendent state claims are advanced under Miss. Const. art. 3, §§ 14, 23 and 24.

3. In reaching its decision, the court is guided by the standard encompassed under Federal Rule 56(c): Summary judgment is rendered when the court is convinced that (1) no genuine issue of material fact exists and (2) movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

4. The incident occurred late in the afternoon of August 28, 1988.

5. The traffic light stands at the intersection of Montgomery Street and Route 82. Hackathorn turned left off Montgomery onto Route 82 against a red light.

6. Section 1983 provides: Every person who, under color of any state statute, ..., subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

*Easterling,* 694 F.Supp. at 917. In any § 1983 lawsuit, the first inquiry always is whether plaintiff has been deprived of a right secured by the "Constitution and laws." *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Shillingford,* 634 F.2d at 265 (quoting *Baker v. McCollan,* 443 U.S. 137, 138 & 146, 99 S.Ct. 2689, 2692 & 2695, 61 L.Ed.2d 433, 439 (1979).

Thus, before turning to defendants summary judgment arguments, the court combs through plaintiffs' § 1983 complaint in search of specific, alleged constitutional violations [7], and finds two federal claims for the use of excessive force; plaintiffs contend defendant's high-speed police pursuit of the traffic offender, Hackathorn, impinged their Fourth and Fourteenth Amendment rights. To determine whether plaintiffs have a viable § 1983 complaint, the court considers the applicability of these Amendments within the context of high speed police pursuits.

A. The Fourteenth Amendment Due Process Claim

■ Section 1983 complaints must embrace more than a generic, amorphous claim of due process [8] violations. *Easterling,* 694 F.Supp. at 917. Vague, nebulous due process claims are too broad, given the complexities inherent in the due process clause of the Fourteenth Amendment, from which three distinct constitutional protections originate. *Easterling,* 694 F.Supp. at 917. First of all, the constitutional provision incorporates specific protections outlined in the Bill of Rights. *Id.* Of the two remaining protections, procedural due process and substantive due process, plaintiffs contend they suffered a substantive due process violation; they do not advance a procedural due process claim. Before beginning its discussion of substantive due process, however, the court briefly addresses procedural due process to determine whether such a claim could proceed in plaintiffs' case.

1. *Procedural Due Process*

■ Claims of procedural due process violations are not cognizable in federal court if adequate post-deprivation state tort remedies exist. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled on other grounds [9] in *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662, 668 (1986)). *See Gilmere v. Atlanta,* 737 F.2d 894 (11th Cir.1984), *on rehearing,* 774 F.2d 1495 (11th Cir.1985) (en banc), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986). The holding of *Parratt* states that a random and unauthorized deprivation of property by a state employee does not amount to a due process violation cognizable under § 1983, if the state provides a meaningful post-deprivation remedy. *Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917, 68 L.Ed.2d at 434.[10] Reluctant to convert the Fourteenth Amendment into a sea of tort law, the Court relegated a prisoner's action over the loss of his $23.50 hobby kit to a tort suit in state court. While *Parratt* did not intend for all § 1983 claims to be transformed into state tort actions whenever

---

7. The statutory language and case law both require plaintiffs to allege the specific constitutional violations committed. 42 U.S.C. § 1983; *Baker,* 443 U.S. at 139, 99 S.Ct. at 2692, 61 L.Ed.2d at 439.

8. Oftentimes, alleged due process violations are of a dubious quality. Plaintiffs with weak constitutional claims invariably couch their complaints in the due process clause. The practice is so frequent that some in the federal judiciary, borrowing the words of Samuel Johnson, refer to due process as "the last refuge of scoundrels."

9. The Supreme Court "overruled[d] *Parratt* to the extent that it state[d] that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." *Daniels,* 474 U.S. at 330–31, 106 S.Ct. at 664, 88 L.Ed.2d at 668.

10. Several years later, the Court extended its rationale in *Parratt* and noted that an adequate post-deprivation hearing satisfied fair notions of due process, in instances where it was impractical to hold a pre-deprivation hearing. *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see generally Fundiller v. Cooper City,* 777 F.2d 1436, 1439 (11th Cir.1985).

possible, the case has been construed in the neighboring 11th Circuit as an indication that procedural due process deprivations do not occur until procedure for redress is denied in the state system. *Gilmere v. Atlanta*, 774 F.2d 1495, 1499 (11th Cir. 1985) (en banc). In this way, procedural due process claims are distinguishable "from other constitutional violations that are complete, regardless of the subsequent adjudicative procedures" that are used. *Easterling*, 694 F.Supp. at 918.

■ Applying this precept to the instant case, it is obvious that a claim of deprivation of procedural due process cannot proceed, since plaintiffs have adequate post deprivation state tort remedies to pursue a recovery for their injuries. "[A] complaint does not state a valid procedural due process objection—and a valid § 1983 claim— if it does not include a challenge to the fundamental fairness of the State's procedures." *Daniels v. Williams*, 474 U.S. 327, 339, 106 S.Ct. 662, 679, 88 L.Ed.2d 662, 673 (1986) (Stevens, J., concurring). Therefore, if plaintiffs have a claim under the Fourteenth Amendment, it is for a denial of substantive due process rights.

### 2. *Substantive Due Process*

■ In view of the fact that plaintiffs were not the parties who were the target of the police chase, and their injuries are not commonly viewed as a seizure, the issue of this case initially appears to be one of substantive due process. Due to the Supreme Court's holding in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), however, plaintiffs' claim of excessive force cannot be sustained under a substantive due process analysis. *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989) (diverging from *Shillingford*, 634 F.2d at 263). *Graham* calls for all excessive force claims "aris[ing] in the context of an arrest" to be reviewed under a Fourth Amendment Analysis. *Graham,*

490 U.S. at 394, 109 S.Ct. at 1871, 104 L.Ed.2d at 454 (disapproving *Shillingford*, 634 F.2d at 263).[11]

In many ways, substantive due process is a complete legal mystery. "[A]s a historic and generative principle," substantive due process is indefinable. *Easterling*, 694 F.Supp. at 920 (quoting *Rochin v. California*, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952)). Therefore, any specific pronouncement regarding its applicability is welcomed. Thus, it is assuring to at least know that *Graham*, renders the abstruse legal principle inapplicable in cases which allege use of excessive force in the course of an arrest or stop. *Graham*, 490 U.S. at 394, 109 S.Ct. at 1870, 104 L.Ed.2d at 454. Nonetheless, a substantive due process claim is raised in plaintiffs' complaint, albeit within the context of excessive force in the form of a police chase.[12] Therefore, the court devotes some of its discussion to the esoteric notion of substantive due process, in search of some other form of governmental deprivation outside the realm of excessive force, where substantive due process may be relevant. *See Britt v. Little Rock Police Dept.*, 721 F.Supp. 189, 191 (E.D.Ark.1989) (culpable deprivation of life, liberty or property by one acting under color of state law, could be viewed as substantive due process violation).

■ The "substantive" component of the due process clause, generally known as "substantive due process," bars certain arbitrary government actions, even if their implementation is fair. *See Easterling*, 694 F.Supp. at 920 (even the most stringent procedural safeguards will not shield certain governmental conduct from amounting to a substantive due process violation). *Easterling*, 694 F.Supp. at 919. [I]t is violated when the government engages in actions which " ' "offend those canons of decency and fairness which express the

---

**11.** *Graham* and its impact on excessive force claims in the Fifth Circuit is further discussed later in this opinion.

**12.** Plaintiffs allege the use of excessive force to subdue a traffic offender amounts to an "uncon-

stitutional deprivation of [their] property and liberty rights ... in violation of [their] *substantive due process rights* (emphasis added) under ... the Fourteenth Amendment." (Compl., p. 3.)

notions of justice of English-speaking peoples (sic) even towards those charged with the most heinous offenses." '" *Easterling,* 694 F.Supp. at 920 (quoting *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183, 188 (1952) quoting *Malinski v. New York,* 324 U.S. 401, 416–17, 65 S.Ct. 781, 789, 89 L.Ed. 1029, 1039 (1945)). Substantive due process is violated by state conduct that "shocks the conscience" or constitutes force that is "brutal." *Rochin,* 342 U.S. at 172–73, 72 S.Ct. at 209, *Gilmere,* 774 F.2d at 1500. A law enforcement officer's infliction of personal injury on a person by the application of undue force may deprive the victim of liberty without due process of law. *Johnson v. Glick,* 481 F.2d 1028, 1032 (2d Cir.), *cert. denied, sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Not every personal hurt inflicted by a state actor, however, constitutes a violation of the Fourteenth Amendment. *Shillingford,* 634 F.2d. at 265. To give rise to a substantive due process claim, the behavior of state actors is invariably more egregious than that which gives rise to a simple tort action. *See also Daniels,* 474 U.S. at 330, 106 S.Ct. at 664, 88 L.Ed.2d at 668 (Constitution does not supplant traditional tort law; due process clause not implicated by negligent act of official causing unintended loss of or injury to life, liberty or property).

■■■ Although Section 1983 "should be read against the background of [common law] tort liability, and may thus be analyzed as a species of tort," *Williams v. Kelley,* 624 F.2d 695, 697 (5th Cir.1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976)), it is not a general tort statute. *Shillingford v. Holmes,* 634 F.2d 263, 264 (5th Cir.1981). Rather, it is a means to address violations of "constitutional" torts, so to speak. *Kelley,* 624 F.2d at 697. Section 1983 does not convert common law torts into constitutional claims when the tortfeasor so happens to be acting under color of state law. *See Shillingford,* 634 F.2d at 264 (Section 1983 does not grant cause of action for every injury wrongfully inflicted by a state officer); *Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). *See also Paul v. Davis,* 424 U.S. 693, 698, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976) (section 1983 does not create cause of action for survivors of innocent bystander mistakenly shot by a policeman or negligently killed by a sheriff driving a government vehicle); *Cannon v. Taylor,* 782 F.2d 947, 950 (11th Cir.1986), ("we hold that a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no § 1983 cause of action for violation of a federal right."). Thus, the question for the court is whether the high-speed police chase—apart from its lawfulness or unlawfulness in the context of state law—was sufficiently egregious to rise to the level of a violation of the Constitution. *Williams,* 624 F.2d at 697 (quoting *Turpin v. Mailet,* 579 F.2d 152, 169 (2d Cir.) (concurring opinion), *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978)).

To distinguish between those personal injuries for which redress is permissible under § 1983 and those for which, however wrongful, a remedy must be sought under state tort law, *Shillingford,* 634 F.2d at 264, courts traditionally looked to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Johnson,* 481 F.2d at 1033. These factors, better known as the *Johnson* factors, were adopted by the Fifth Circuit in *Williams v. Kelley,* 624 F.2d at 697, a case where jailers applied a fatal choke hold upon plaintiff's decedent. *Easterling,* 694 F.Supp. at 920. To determine whether a substantive due process violation existed in the context of § 1983, the Fifth Circuit subsequently developed a test around the *Johnson* factors in *Shilling-*

*ford,* 634 F.2d at 265. Tailored to fit the Fourteenth Amendment's concept of substantive due process, the *Shillingford* test considered whether the "state officer's action [1] caused severe injuries, [2] was grossly disproportionate to the need for action under the circumstances and [3] was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of power that shocks the conscience." *Id.* at 265. If all three factors were answered in the affirmative, then redress was permissible under § 1983. *Shillingford,* 634 F.2d at 265 (citing *Johnson v. Glick,* 481 F.2d at 1033).[13] While plaintiffs have suffered significant injuries, and therefore have met the first prong of a substantive due process analysis, they have fail to satisfy the two remaining factors.

Plaintiffs allege that defendant Salmon acted with gross, wanton and reckless disregard for their safety. (Compl. at 4.) For plaintiffs to defeat summary judgment on their substantive due process claim, they must come forward with evidence that reasonably suggests Officer Salmon was reckless or grossly negligent in pursuing a speeding traffic offender; plaintiffs fail to meet their burden. Anytime the police engage in high-speed pursuits, there is the potential risk of an automobile accident. Plaintiffs opine that this hazard, combined with the fact that the fleeing traffic offender posed no apparent risk to anyone at the time the chase was initiated, make the decision to embark on a high-speed chase grossly negligent because the potential harm to innocent motorists, far outweighed the benefits of apprehending a moving violator. In plaintiffs' estimation, to pursue at all was reckless, and the harms proximately caused by the pursuit are constitutional deprivations. "It is clear to this court that no reasonable factfinder could hold, based on the evidence offered, that the officer was grossly negligent." *Britt,* 721 F.Supp. at 194. It was not unreasonable for the police to turn on his siren and

lights or chase after the traffic offender for ninety seconds. *Id.* at 195. The brief chase that transpired after defendant Salmon observed Hackathorn crossing the double yellow line at high speed "did not involve such disregard of known dangers" to amount to a constitutional deprivation of plaintiffs' substantive due process rights. *Id.* There is nothing in the summary judgment evidence that even suggests the officer acted with conscious disregard of the potential for extreme danger so that he might be considered reckless. Furthermore, the record is devoid of any evidence of an intent to injure, "either in the sense of desiring to cause harm or knowing that the harm was substantially certain to result." *Britt,* 721 F.Supp. at 194.

Because the court holds that there was no constitutional violation, it is unnecessary to reach the question of whether the defense of qualified immunity is available to the officer if he had violated plaintiffs' Fourteenth Amendment rights. *Id.* Similarly, the court's conclusion that there is insufficient evidence to raise a factual issue as to the officer's recklessness requires summary judgment in the claims against Starkville and the police chief. If Officer Salmon did not violate plaintiffs' constitutional rights, the same applies to the police chief and the city of Starkville. *Britt,* 721 F.Supp. at 196.

### B. The Excessive Force Claim and the Fourth Amendment Argument

 Besides violating the Fourteenth Amendment, Defendant Salmon's use of excessive force in conducting a high-speed police pursuit of a traffic violator, plaintiffs argue, amounted to an unreasonable seizure in violation of their Fourth Amendment rights.[14] Usually, the Fourth Amendment is invoked by the perceived offender to protest any excessive force used in making his arrest; when an innocent bystander challenges an officer's high-speed pursuit of a traffic offender, the issue takes a

---

**13.** In *Shillingford,* the plaintiff suffered a lacerated forehead when a policeman struck him with a nightstick. *Shillingford,* 634 F.2d at 264.

**14.** A seizure triggers Fourth Amendment protections, when government actors restrain a citizen's liberty through a display of physical force or authority. *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 455.

somewhat different twist. Nevertheless, the same reasoning applies. *Jones v. Sherrill,* 827 F.2d 1102, 1104 (6th Cir.1987). Even if the plaintiff may not have been the actual target of the arrest, the rule is not diminished—Fourth Amendment analysis still governs. *Roach v. The City of Fredericktown,* 882 F.2d 294, 297 (8th Cir.1989). *See Jones,* 827 F.2d at 1106 (reasoning behind holding that high speed police pursuit is constitutionally permissible method of apprehending traffic offenders applies with same force in Fourth Amendment challenges brought by innocent bystanders). Under *Graham,*

> *[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the *Fourth Amendment* and its "reasonableness" standard, *rather than under a "substantive due process" approach* (emphasis added). Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham,* 490 U.S. at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454.

As previously discussed, some courts, including those in the Fifth Circuit, were inclined to apply a substantive due process analysis in cases alleging excessive force. This practice changed dramatically, following the Supreme Court's pronouncement in *Graham* [15] that claims of excessive force during arrest are governed strictly by the Fourth Amendment. *Mouille v. City of Live Oak,* 918 F.2d 548, 550 (5th Cir.1991); *Brown v. Glossip,* 878 F.2d 871 (5th Cir.

1989). *See Graham,* 490 U.S. at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454 (Fourth Amendment, rather than more generalized notion of substantive due process, must be the basis for analyzing excessive force claims).

The *Graham* decision prompted the Fifth Circuit to revise its prior tripartite test, which it had been applying since *Shillingford,* 634 F.2d at 265. *Brown,* 878 F.2d 871, 872 (5th Cir.1989). Two of *Shillingford's* prongs, subjective malice and gross disproportion of the officer's conduct, no longer apply under the new Fifth Circuit test, modeled after *Graham's* Fourth Amendment standard.[16] *Brown,* 878 F.2d at 873. Guided by *Graham,* the Fifth Circuit has formulated a three-part test, which § 1983 complaints of excessive force must meet. In order to prevail, plaintiffs must show:

(1) a significant injury, which

(2) resulted in directly and *only* from the use of force that was clearly excessive to the need; and the excessiveness of which was

(3) objectively unreasonable.[17]

*Reese v. Anderson,* 926 F.2d 494, 500 (5th Cir.1991) (quoting *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc) (footnote omitted)); *Mouille v. Live Oak,* 918 F.2d at 551; *Lewis v. Goodie,* 798 F.Supp. 382, 388–89 (W.D.La.1992).

 Applying these factors to plaintiffs' scenario, the court concludes there is no viable § 1983 claim. Although injuries were sustained, they did not result "directly and only from" the police pursuit. Police exerted no physical force or authority against plaintiffs. Any restraint on plaintiffs' liberty is attributable to the collision with Hackathorn, the traffic offender;

---

15. In *Graham,* the Court addressed an excessive force claim solely on the basis of the Fourth Amendment, even though the complaint alleged violations of both the Fourteenth Amendment's due process clause and the Fourth Amendment. *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454.

16. *Graham* expressly disapproved of *Shillingford's* use of substantive due process analysis in excessive force claims arising out of arrests or

stops in favor of Fourth Amendment analysis. *See Graham,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (disapproving *Shillingford,* 634 F.2d at 263).

17. *See Brown,* 878 F.2d at 873 (in Fourth Amendment excessive force claims, police officer's "actions must be judged by standards of objective reasonableness").

Hackathorn—not the police—ran a red light and collided with plaintiffs. Hackathorn's actions, not the officer's pursuit, caused plaintiffs' injuries. A high-speed pursuit of a traffic offender that terminates in an auto accident does not constitute a seizure within the meaning of Fourth Amendment violation. *Galas v. McKee*, 801 F.2d 200, 202–03 (6th Cir.1986); *Cf. Cameron v. Pontiac*, 813 F.2d 782, 785 (6th Cir.1987) (suspect killed by fleeing onto highway not seized by pursuing officers); *see Adams v. Canton, Ohio Police Dept.*, 793 F.2d 1290 (6th Cir.1986) (affirming district court's dismissal of decedent's estate's § 1983 action against police department, police chief, mayor, city safety director and individual police officer for pursuing a traffic offender at a high rate of speed, culminating in the offender's collision with decedent's vehicle).

 Even accepting plaintiffs' argument that the collision would not have occurred, but for the police pursuit, the court finds the high-speed chase was not objectively unreasonable. The need for split-second decision making by police officers, who often find themselves in dangerous situations, calls for their actions to be judged under a standard of objective reasonableness. *Brown*, 878 F.2d at 873 (citing *Graham*, 490 U.S. at 396, 109 S.Ct. at 1825, 104 L.Ed.2d at 455). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Reese*, 926 F.2d at 500.

Rather than permitting the speeding Beretta driven by Hackathorn to keep going, possibly causing more harm, defendant Salmon instead chose to pursue the vehicle at the necessary speed. This type of pursuit is not, in the opinion of the court, the kind of unreasonable or outrageous conduct, or arbitrary use of government power contemplated in a § 1983 action. The officer made a choice to protect the public safety by attempting to apprehend an obviously dangerous driver. In fact, the officer may have thwarted an even greater traffic accident by pursuing Hackathorn rather than ignoring his driving. "Indeed,

had [Officer Salmon] not pursued [Hackathorn] (sic) and had his unimpeded progress resulted in a fatal accident, as it well could have, [defendants] might be facing a different § 1983 claim based on their failure to act[.]" *Jones*, 827 F.2d at 1107.

In holding that plaintiffs have not stated a constitutional claim to support a § 1983 action, the court does not mean to suggest that defendants could or could not be held to be the proximate cause of plaintiffs' injuries in an ordinary personal injury suit under Mississippi tort law. The resolution of ordinary negligence issues, however, is a matter for the Mississippi courts to address. Since there is no federal claim under § 1983, the court declines to exercise supplemental jurisdiction over the pendent state claims at the summary judgment stage, dismissing them without prejudice for refiling in state court. *Reese*, 926 F.2d at 501.

### C. Failure to Train

 In the case of *Canton v. Harris*, 489 U.S. 378, 389–92, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989), the Supreme Court recognized and held that the inadequacy of police training may serve as the basis for a § 1983 claim against a municipality through its policy maker ... "where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." *Canton,* 489 U.S. at 388, 109 S.Ct. at 1204, 103 L.Ed.2d at 411. In order for municipal liability to attach, however, there must first be an underlying violation of plaintiffs' constitutional rights by a municipal employee. *Roach*, 882 F.2d at 298. In this case we have found no such violations, therefore, neither Starkville, nor the Chief of Police, nor the Mayor can be held liable for plaintiffs' injuries under a theory of inadequate training.

 Even assuming hypothetically that the pursuit did amount to a constitutional violation, there still would be no municipal liability since nothing in the facts indicates that high-speed police pursuits resulting in collisions with innocent motorists occurred on a number of occasions. To be valid, § 1983 lawsuits against a municipality via its official policy maker based on a

failure to train must at least demonstrate a pattern of similar incidents in which citizens were injured. *Leatherman v. Tarrant County Narcotics Intelligence,* 954 F.2d 1054 (5th Cir.1992); *Rodriguez v. Avita,* 871 F.2d 552, 554–55 (5th Cir.1989). Proof of a single incident of unconstitutional activity is not sufficient to impose liability. *Id.*

### III. *Conclusion*

For the foregoing reasons, defendants' motion for summary judgment is granted. Defendants did not act unconstitutionally in pursuing a traffic offender. The collision between the chased offender and plaintiffs does not give rise to a § 1983 claim against defendants. The decision to pursue Hackathorn was objectively reasonable under the circumstances and did not amount to a constitutional deprivation of plaintiffs' Fourth or Fourteenth Amendment rights. Since plaintiffs have not suffered a constitutional violation, their claim against Starkville, its Mayor, its Chief of Police and other city officials must fail. Since there is no viable federal claim, plaintiffs' state claims are dismissed without prejudice to be refiled in Mississippi court.

An order in accordance with this memorandum opinion shall be entered.