**Dorothy BRITT, Individually and as Administratrix of the Estate of Marilyn D. York; Kenny York; Willie York; and Viola Dodson, Plaintiffs,**

v.

**LITTLE ROCK POLICE DEPARTMENT, Little Rock Police Officer Stan Harmon, In His Individual Capacity; Jim Vandiver, Individually and in His Official Capacity as Acting Chief, Defendants.**

**No. LR-C-88-875.**

United States District Court,
E.D. Arkansas, W.D.

Aug. 29, 1989.

David S. Mitchell and Robert M. McHenry, Little Rock, Ark., for plaintiffs.

Mark Stodola, City Atty., Little Rock, Ark., for defendants.

## ORDER

EISELE, Chief Judge.

Plaintiffs in this civil rights action are the administratrix of the estate of Marilyn Denise York (who was killed in a car crash following a police officer's pursuit of a car thief), members of her family and the owner of an automobile damaged in the collision. Defendants are a Little Rock police officer, the Little Rock Chief of Police and the City of Little Rock.

Plaintiffs allege that the officer's pursuit of the suspect was, for reasons alleged in the Complaint, in "wanton and reckless disregard to the safety of the public," that the officer "breached his duty to use due care, or at least a duty to refrain from reckless, willful or wanton conduct," that the officer "acted with total disregard to the safety of the public," and that he acted with "willful, reckless and wanton negligence" in conducting the chase. This conduct is alleged to have deprived plaintiffs of constitutional rights secured to them by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and it is asserted that plaintiffs are entitled to relief under 42 U.S.C. § 1983. The police chief and the city are alleged to be legally responsible for the injuries the officer inflicted on Ms. York and the other plaintiffs.

Defendants have moved for summary judgment. After considering the evidentiary materials filed in support of and in opposition to the motion, the Court concludes that plaintiffs have failed to present a submissible case that the officer's conduct violated any of their Constitutional rights.

The claims against him must therefore be dismissed. Furthermore, if the officer did not inflict Constitutional injury on plaintiffs, it follows that the police chief and the city cannot be liable for causing, allowing or failing to prevent any such injury, and the claims against them must likewise be dismissed.

## PROCEDURAL POSTURE

All of the defendants have moved to dismiss the complaint. Attached to the motions were various papers, so the Court notified plaintiffs that the motions would be deemed ones for summary judgment. *See* Order of March 28, 1989; Fed.R.Civ.P. 12(b), 56. Plaintiffs were granted approximately 6 weeks within which to take requested discovery and to respond to defendants' motions. Fed.R.Civ.P. 56(f). They have timely filed their response, with supporting evidence. Defendants have replied with additional evidentiary material.

Plaintiffs have also moved for summary judgment. Defendants have responded to that motion, and all the issues raised in the cross motions are now ripe for adjudication.

## UNTENABLE CLAIMS

The Amended Complaint alleges violations of the First, Fifth, Sixth and Fourteenth Amendments to the Constitution. Most of these are not even colorable, and are not argued in plaintiffs' papers. Plaintiffs do not allege that any of the rights protected by the First and Sixth Amendments have been violated. The Fifth Amendment only applies to the federal government, which is not alleged to be involved here. Finally, there is no argument that plaintiffs have been deprived of procedural due process. Thus, the claims for relief under those provisions may be dismissed in the early going.

What plaintiffs actually complain of are alleged deprivations of life, liberty and property interests in violation of the substantive due process component of the Fourteenth Amendment. Plaintiffs concede as much in their Response to Motion to Dismiss Amended Complaint: "Plaintiffs' complaint states sufficient facts to support its allegation that defendants violated the constitutional right to substantive due process by acting with gross negligence or with reckless indifference to Marilyn Denise York's safety."

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. "The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552-3, 91 L.Ed.2d 265 (1986).

## OFFICER'S LIABILITY

Defendants' motion assumes that the conduct of the officer proximately caused the death of Ms. York, but argues that he is nevertheless not liable under section 1983 because his conduct did not violate any of plaintiffs' Constitutional rights. There are two plausible avenues to analyzing plaintiffs' claims. A culpable deprivation of life, liberty or property by one acting under color of state law could be viewed as a violation of substantive due process. Alternatively, the injuries inflicted on plaintiffs could be considered to be part of the officer's attempted seizure of the fleeing suspect, so that an unreasonable pursuit in the nature of excessive force would violate the Fourth Amend-

ment, applied to the states by the Fourteenth.

Originally, the parties' arguments focused on substantive due process, but subsequent Supreme Court and Eighth Circuit decisions suggest that the search and seizure analysis is more appropriate. The Court was initially inclined to view the issue as one of substantive due process, because the plaintiffs are not the person the officer was trying to seize and their injury is not easily thought of as a seizure. *See Brower v. County of Inyo,* —— U.S. ——, 109 S.Ct. 1378, 1380, 103 L.Ed.2d 628 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful.... a Fourth Amendment seizure [occurs] only when there is a governmental termination of freedom of movement *through means intentionally applied.*") But a recent Eighth Circuit decision construes *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) as requiring that all injuries arising "in the context of an arrest or investigatory stop" be analyzed under "the fourth amendment's prohibition against unreasonable search and seizure," even if the plaintiffs were not the targets of the attempted seizure. *Roach v. The City of Fredericktown,* 882 F.2d 294, 297 (1989). Both approaches will be discussed here.

■ We will begin with substantive due process, the residual concept which guards against improper governmental deprivations not expressly prohibited by express provisions of the incorporated portions of the Bill of Rights. Defendants argue that the officer was at most negligent in his actions, and that negligence does not rise to the level of a Constitutional deprivation. Plaintiffs claim that the officer was grossly negligent or reckless. It is clear that negligence of state actors, their failure to exercise ordinary care, will not support a cause of action under § 1983. That statute does not constitutionalize common law remedies just because the tortfeasor is acting under

color of state law. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Section 1983 does not create a cause of action for "survivors of an innocent bystander mistakenly shot by a policeman or negligently killed by a sheriff driving a government vehicle." *Paul v. Davis,* 424 U.S. 693, 698, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976).

It is also clear that an intentional deprivation of life, liberty and property interests by a state actor does state a cause of action under § 1983, and that "intentional" actions include such culpable mental states as callous indifference. Id. But it is not clear "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Daniels,* 474 U.S., at 334 n. 3, 106 S.Ct., at 666 n. 3.

Cases after *Daniels* and *Davidson* have generally agreed that recklessness, which may be defined as "intentionally doing an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow," Prosser & Keeton, *Torts,* at 212, is sufficiently like intent that due process is implicated. But there is a controversy over whether gross negligence, meaning very great negligence or the want of even slight care, Prosser & Keeton, supra, at 211, is enough. *City of Canton, Ohio v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 1204 n. 7, 103 L.Ed.2d 412 (1989); *Archie v. City of Racine,* 847 F.2d 1211, 1219–20 & 1220 n. 8 (7th Cir.1988) (en banc).

The Eighth Circuit has addressed the question, though it has not given an absolutely clear answer. Most recently, in *Roach,* the Court held that the pursuing officer's "conduct does not rise to the level of gross negligence and, therefore, most certainly does not rise to the level of conduct which would sustain a claim under section 1983." 882 F.2d at 297. In *Rasmussen v. Larsen,* 863 F.2d 603, 605, 606 (8th Cir.1988), it affirmed a district court's

holding that "negligent or even grossly negligent actions do not trigger the due process clause of the fourteenth amendment." In *Doe v. Hennepin County*, 858 F.2d 1325, 1329 (8th Cir.1988), the Court referred favorably to the Seventh Circuit's decision in *Archie*, which held that "gross negligence does not violate the Due Process Clause." 847 F.2d, at 1219. In *Wells v. Walker*, 852 F.2d 368, 371 (8th Cir.1988) the Court declined to address the issue because plaintiff merely alleged ordinary negligence. In *Tallman v. Reagan*, 846 F.2d 494, 495 (8th Cir.1988), the Court held that plaintiff's complaint alleged at most gross negligence, "which does not implicate the due process clause." And, in *Myers v. Morris*, 810 F.2d 1437, 1468 (8th Cir.1987), the Court interpreted *Daniels* and *Davidson* as holding that "allegations that the sheriff or other defendants deprived plaintiffs of procedural or substantive due process interests through negligent or 'grossly negligent' conduct does not state a claim under 42 U.S.C. 1983."

On the other hand, in *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir.1987), the Court held that punitive damages could be awarded in a 1983 action for "oppression, malice, *gross negligence*, willful or wanton conduct." This language appears to recognize gross negligence as a basis for § 1983 liability, but the language quoted is from *Goodwin v. Circuit Court of St. Louis, Mo.*, 729 F.2d 541, 547 (8th Cir. 1984), a pre-*Daniels* and *Davidson* opinion. At the time of *Goodwin*, negligent deprivation of property could amount to a due process violation, and the Court in that decision was apparently saying that punitive damages could only be awarded for something more than negligence. By the time of *Garza*, negligence was no longer sufficient, but the Court did not modify the list of mental states which would support an award of punitive damages (which is not surprising, as the issue was not before the Court or suggested by the issues actually raised on appeal).

■ This Court concludes that the Eighth Circuit does not recognize a § 1983 cause of action for gross negligence in

lawsuits of this sort. Moreover, if the question were open in this Circuit, this Court would follow the persuasive argument of the Seventh Circuit (en banc) in the *Archie* case:

> Gross negligence blends into negligence; there is an indistinct and unusually invisible line between benefits exceeding the costs of precautions (negligence) and benefits substantially exceeding the costs (gross negligence). The malleable quality of these terms has prdoduced scoffing among many, who see gross negligence as simply negligence "with the addition of a vituperative eptithet." *Wilson v. Brett*, [1843] 11 M. & W. 113, 116, 152 Eng.Rep. 737 (Rolfe, B.). See also Prosser & Keeton, *Torts*, section 34. A line that cannot be policed is not a line worth drawing in constitutional law.
>
> The line ought not be drawn even if it could be patrolled. The distinction between negligence and gross negligence does not respond to the functions of the Due Process Clause. The Court concluded in *Daniels* and *Davidson* that the Clause is designed to control abuses of governmental power, and on that account does not reach negligence but does proscribe intentional deprivations. "Recklessness" is a proxy for intent, "gross negligence" is not. To say that conduct is not reckless is to say that there is no basis for finding abuse of governmental power. An error is still an error, "gross" or not; "due process" does not mean "due care;" since *Daniels* and *Davidson* held that errors are not unconstitutional, it follows that "gross negligence" is not a sufficient basis for liability.

847 F.2d, at 1219–20 *accord Cannon v. Taylor*, 782 F.2d 947, 950 (5th Cir.1986) ("we hold that a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right.").

As noted, we are here beyond the pleadings stage. Plaintiffs have alleged that the officer acted with a range of culpable mental states, but defendants' motion for sum-

mary judgment puts upon plaintiffs the obligation to come forward with evidence from which a factfinder could reasonably find that the officer actually had one of those mental states. There is no evidence of intent to injure, either in the sense of desiring to cause harm or knowing that the harm was substantially certain to result. Nor is there any evidence from which it could reasonably be concluded that the officer acted with such conscious disregard for extreme danger that he might be considered reckless. Reviewing the materials submitted in opposition to defendants' motion for summary judgment, there is an entire absence of evidence upon which any such finding could be based.

■ Plaintiffs' main contention in opposing the motion for summary judgment is that the officer acted with gross negligence, *see, e.g.,* Supplemental Brief in Support of Plaintiffs' Response to Motion to Dismiss, a contention which this Court believes is insufficient as a matter of law. Moreover, the Court does not find sufficient evidence to support a finding of gross negligence, even if that standard is applied.

The only substantial evidence plaintiffs offer on the circumstances of the accident is the officer's deposition. *See* Harmon Deposition Transcript ("Harmon Dep."), at 24–69. (There are also portions of the deposition of the police chief, but his knowledge of the accident is largely second-hand, from material based on the officer's recollection. Moreover, it in no way contradicts or impeaches the officer's testimony.) The officer testified that he spotted the stolen car ahead of him while both he and it were stopped at a traffic light, waiting to turn left. He said that he called for backup, and that the driver of the stolen car saw the police car and took off at a high rate of speed. The officer pursued in a chase that lasted about a minute, including a brief period of time when the stolen car was stopped and apparently out of gear. There was initially not much traffic, and the officer was on the verge of breaking off the pursuit when the accident occurred. He did not see the actual accident because the stolen car had disappeared through a dust cloud.

Now, it may be that a jury could find the that the officer did not exercise ordinary care in pursuing the stolen car, but that fact is not sufficient to state a § 1983 claim. It is clear to this Court that no reasonable factfinder could hold, based on the evidence offered, that the officer was grossly negligent. Of course, the factfinder would be free to disbelieve what the officer said, but in that event there would be no evidence in the record at all about the circumstances of the crash.

As the Sixth Circuit said in *Jones v. Sherrill,* 827 F.2d 1102, 1106 (6th Cir.1987), "[i]f the courts are to make any sense of the distinction between gross negligence and simple negligence, we must ensure that gross negligence is something more than simple negligence 'with the addition of a vituperative epithet.' The facts alleged in support of the legal conclusion of gross negligence must be sufficient to charge the government officials with outrageous conduct or arbitrary use of government power." [1]

The possibility of an accident is a known risk anytime the police engage in high speed pursuit of fleeing suspects. Plaintiffs suggest that this hazard, combined with the fact that the driver and stolen car posed no apparent risk to anyone at the time the chase was initiated, make the decision to undertake pursuit grossly negligent (or reckless) because the magnitude of the

---

**1.** The Sixth Circuit is one of the Courts of Appeal which theoretically recognizes a cause of action for grossly negligent deprivation of life, liberty or property. *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277 (6th Cir.1987). But it defines gross negligence as when a tortfeasor "intentionally does something unreasonable with disregard of a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow." *Id.,* 814 F.2d, at 282, *quoted Jones,* 827 F.2d, at 1106. The difference in application between this definition and the traditional definition of recklessness, if there is one, is so fine as to be almost imperceptible. *Jones* affirmed a motion to dismiss, while the order here is on motion for summary judgment, after full opportunity for plaintiffs to develop the evidence.

potential harm far outweighed the benefits of apprehending the car thief. Thus, in plaintiffs' view, the gross negligence occurred as soon as the officer accelerated after the stolen car. In plaintiffs' view, to pursue at all was recklessness, and the harms proximately caused by the pursuit are Constitutional deprivations.

■ There is a per se rule that application of deadly force to a fleeing suspect "[w]here the suspect poses no immediate threat to the officer and not threat to others" amounts to an unreasonable seizure. *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). But a pursuit is not deadly force. Many pursuits end without any injury to anyone. The rule that it is unreasonable to try to kill every escaping felon does not mean that it is also unreasonable to try to catch every one of them. It may be conceded that a policy of not pursuing those who present no apparent danger might be a desirable rule for a police department to adopt, but this Court can find no authority holding that it is a Constitutionally required one. *See Jones*, 827 F.2d 1102; *Galas v. McKee*, 801 F.2d 200 (6th Cir.1986); *Richardson v. City of Indianapolis*, 658 F.2d 494 (7th Cir.1981); *Allen v. Cook*, 668 F.Supp. 1460 (E.D.Okla.1987).

If we are not to follow a bright line rule that it is always unreasonable to pursue a fleeing felon who is not an immediate threat to the officer or others, then each pursuit must be evaluated on its own facts. A plaintiff who wishes to avoid summary judgment must come forward with evidence which reasonably suggests that the pursuing officer was reckless (or, under the more permissive standard, grossly negligent). As the Court has already said, plaintiffs have failed to meet that burden. It would not have been reckless for the driver to turn on his blue lights siren in an attempt to induce the stolen car to pull over. It would not have been unreasonable for him to have accelerated after the car for a short distance in the light traffic which the driver described, to see if the stolen car would desist from flight. At some point, continued pursuit at high speeds in heavy traffic might rise to the level of recklessness, but the brief chase here did not involve such disregard of known dangers as to allow plaintiffs to recover against the officer.

Plaintiffs' Supplemental Brief in Support of Plaintiffs' Response to Motion to Dismiss lists five questions which they contend must be answered by the trier of fact. The Court disagrees that the evidence and circumstances in this case require that the questions be submitted to a factfinder. Question two, whether the officer acted with "reckless indifference to known dangers," is the ultimate question in the case against the officer, and the Court has explained why it does not believe that plaintiffs have come forward with evidence sufficient to support a jury finding that the officer acted recklessly. As to the other questions, the Court concludes either that the answers would not sustain a finding of recklessness (Questions 1 and 3) or that there is insufficient evidence to support a finding in plaintiffs' favor (Questions 1, 4 and 5).

■ Evaluation of the chase and crash under the "reasonableness" standard of the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests, against the countervailing governmental interests at stake." *Roach*, at 297. Here, as in the substantive due process analysis, the Court must find that plaintiffs have failed to come forward with evidence sufficient to make a case submissible to a jury that the officer's conduct was Constitutionally unreasonable. In *Roach*, the Court said that the officer's "use of high speed pursuit was reasonable under the circumstances. He had been alerted that the license plate on the [pursued] car was not registered to that car. [The officer] attempted to stop the vehicle, and when [the suspect] refused to stop, [the officer] pursued the car." At 297. The facts in the case at bar are essentially the same. There are differences of detail, as there always will be, but these are immaterial.

### OTHER DEFENDANTS' LIABILITY

The Court's conclusion that there is insufficient evidence to raise a factual issue

as to the driver's recklessness *proprio vigore* requires a dismissal of the claims against the police chief and the city. If the officer did not violate plaintiffs' Constitutional rights, then the failure of the police chief and the city to take steps to protect plaintiffs cannot be the cause of any Constitutional injury.[2] As the Supreme Court held in a similar situation, these defendants "were sued only because they were thought legally responsible for [the officer's] actions; if the latter inflicted no constitutional injury on [plaintiffs], it is inconceivable that [the supervisory defendants] could be liable to [plaintiffs]." *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *see also Roach*, at 298; *Swink v. City of Pagedale*, 810 F.2d 791, 794-5 (8th Cir.1987); *Palmerin v. City of Riverside*, 794 F.2d 1409 (9th Cir.1986); *Wing v. Britton*, 748 F.2d 494, 498 (8th Cir.1984).

█ That rule also disposes of plaintiffs' motion for summary judgment, which claims that the city's pursuit policy is Constitutionally inadequate. We may assume, strictly for the sake of this argument, that the policy is deficient; in fact, the result would be the same even if there were no policy at all and even if police officers were allowed to make their own decisions about when to pursue fleeing suspects, how fast to go and how long to continue the pursuits. It could be conceded that such a policy would amount to "deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton, Ohio v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989), and that a city which adopted that policy would be exposing itself to liability to all those injured as a result ("for liability to attach in this circumstance the identified deficiency in a city's [policy] must be closely related to the ultimate injury," *id.*, 109 S.Ct., at 1206).

Still, the city is not liable under 1983 to those who are not Constitutionally injured. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force [or a reckless pursuit] is quite beside the point." *City of Los Angeles*, 475 U.S., at 799, 106 S.Ct., at 1573.

CONCLUSION

The incident which gives rise to plaintiffs' claims here is one of extraordinary tragedy and horror. But the Fourteenth Amendment is intended to restrain abuse of power by the states and their agents, whether the conduct is labelled intentional, callously indifferent, or reckless. *Cf. DeShaney v. Winnebago County Department of Social Services*, —— U.S. ——, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) ("the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression," *quoting Davidson* and *Daniels*). It is not aimed at every failure of a state actor to use reasonable care and it does not set the federal courts as the final arbiters of what is and is not due care in every of the countless incidents in which the state and its citizens interact. All of the plaintiffs' respective federal claims must be dismissed. There is reference in the Amended Complaint to pendent state claims. These will be dismissed without prejudice.

IT IS THEREFORE ORDERED that the motions of all of the defendants for summary judgment be, and they are hereby, GRANTED. Plaintiffs' federal law claims against all defendants are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that plaintiffs' pendent state law claims are hereby DISMISSED WITHOUT PREJUDICE.

---

**2.** Because the Court holds that there was no Constitutional violation, it is not necessary to reach the question of whether the officer would have qualified immunity if he had violated any of the plaintiffs' Fourteenth Amendment rights.