Garner GREGORY, Administrator of the Estate of Joe Edwin Gregory; Beate Gregory, individually and as mother and next friend of Joe Ray Gregory; and Donna Mae Fields, Appellants,

v.

The CITY OF ROGERS, ARKANSAS; Ptl. Ronnie Howell, individually and in his capacity as a police officer of the City of Rogers, Arkansas; and Imperial Casualty and Indemnity Co., Appellees.

No. 89–2863WA.

United States Court of Appeals, Eighth Circuit.

Argued Oct. 9, 1990.

Decided Dec. 12, 1990.

menced the action pursuant to 42 U.S.C. § 1983 (1988) after Joe Edwin Gregory (Gregory) was killed and Fields was injured in an automobile accident. The Gregory Estate and Fields contend that Fields and Gregory were deprived of their substantive due process rights when police officers, after arresting the sober driver of Gregory's vehicle, failed to detain or otherwise safeguard Gregory and Fields, who were intoxicated. In its order dismissing the action, the court ruled "sua sponte" that the court lacked subject matter jurisdiction, having previously stated from the bench that the action sounded in negligence and did not state a constitutional violation. No written opinion was filed.

On appeal, appellants contend that the summary judgment/dismissal was improper. They argue that it is a violation of an intoxicated individual's fourteenth amendment right to substantive due process for a police officer to remove the individual's "designated driver" without taking precautions for the individual's safety or arresting the individual, contrary to the command of a statute that imposed a duty to arrest the intoxicated individual. For the reasons set forth below, we reverse and remand for further proceedings.

Susan A. Fox, Springdale, Ark., for appellants.

David H. White, Hot Springs, Ark., for appellees.

Before LAY, Chief Judge, HEANEY and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge:

Appellants Garner Gregory, Beate Gregory and Donna Mae Fields (the Gregory Estate and Fields) appeal from an order, entered October 30, 1989, based on an oral ruling from the bench, in the Western District of Arkansas, H. Franklin Waters, *District Judge*, granting appellees' motion for summary judgment and dismissing the action. The Gregory Estate and Fields com-

* Of the Second Circuit, sitting by designation.

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. We review the district court's conclusions of law *de novo*, since summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

During the early morning hours of Sunday, March 30, 1986, Stanley Turner was driving the vehicle of his friend Gregory. Gregory and Fields were passengers in the vehicle. Gregory and Fields were intoxicated, having been drinking since approximately 7:30 p.m. the night before. Turner was sober and apparently was the group's

"designated driver." At approximately 2:30 a.m., a police officer employed by the City of Rogers, Arkansas, appellee Ronnie Howell (Officer Howell), stopped the vehicle for running a red light. A second officer, Marty Pollock (Officer Pollock) arrived at the scene approximately one minute later to provide "back-up" assistance.

Officer Howell ordered Turner to get out of the car. A warrant check on Turner revealed an outstanding warrant for his arrest.

Although there is no evidence that Officer Howell initiated an investigation of the identity or condition of the passengers in the car, there is evidence that he did know of their intoxicated condition. That is, according to Officer Pollack, Turner told Officer Howell that he was driving the two passengers home; that the three had been attending some night clubs and had decided to go out and "party"; and that Gregory and Fields had been drinking.

Officer Howell took Turner into custody, instructing him to drive the car and follow him to the Rogers police station to clear up the matter of the warrant. At 2:51 a.m., Officer Howell arrived at the police station. Ultimately, Turner was detained and held for transport to another police department. Gregory and Fields were left in the car when Turner arrived at the police station. Officer Pollock, who had followed Turner to the police station, watched Turner park at the station and then resumed his duties elsewhere in the city.

Shortly thereafter, Officer Pollock received information over the radio from the dispatcher to be on the lookout for "this vehicle that had driven off from the station and that the driver was probably going to be intoxicated." In Officer Pollock's words, "not much longer after that, not very long at all, we received the call from the accident at Highway 62 and 102, an injury accident."

At approximately 3:23 a.m., the car, now being driven by Gregory, went off the road while going northbound on U.S. Highway 62, became airborne, and eventually landed 275 feet from the highway. Gregory died within the hour, leaving a wife and infant son. Fields sustained extensive injuries. Gregory's post-mortem blood alcohol content was .23%, more than twice the legal limit of .10%. Fields' blood alcohol content, measured two hours later, was .17%.

The case was scheduled for trial on October 20, 1989. A jury had been empanelled and was waiting. Instead of going forward with the trial, the court granted the summary judgment motion as stated above. The court relied principally on the recent Supreme Court decision, *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), which held that a state has no constitutional duty to protect the public from themselves. Although the court characterized its dismissal of the instant action as one for lack of subject matter jurisdiction, it might more accurately be construed as an entry of summary judgment, since the court concluded that the undisputed facts did not support a finding of anything other than negligence.

## II.

Section 1983 imposes liability upon "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983 (1988). The Supreme Court has made clear that the first inquiry in any § 1983 action "is whether the plaintiff has been deprived of a right 'secured by the Constitution and law.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

In the instant case, the Gregory Estate and Fields claim a violation of rights arising under the fourteenth amendment, which provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. In analyzing appellants' substantive due process claim, "our task is two-fold." *Wells v. Walker*, 852 F.2d 368, 369 (8th Cir.1988), *cert. denied*, 109 S.Ct. 1121 (1989). First, we consider whether Gregory and Fields "possessed a right aris-

ing under the fourteenth amendment. . . ." *Id.* at 370. Second, we determine "whether [appellees'] conduct deprived [them] of [that right] within the meaning of the due process clause." *Id.*

■ Chief among the "liberty" interests protected by the due process clause "is the right to some degree of bodily integrity." *White v. Rochford,* 592 F.2d 381, 383 (7th Cir.1979). Accordingly, the due process clause is implicated, for example, where a police officer uses excessive force in the apprehension of a suspect. *Id.*

Critical to our decision in the instant case is *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989). There the Supreme Court held that the state's failure to protect against *private* violence did not constitute a deprivation of liberty in violation of the due process clause. 489 U.S. at 191. The facts of that case, as the Court acknowledged, were "undeniably tragic." *Id.* Joshua DeShaney, a four-year-old infant, had been in the custody of his father, Randy DeShaney, since 1980. In January 1982, the Winnebago County authorities first learned that Joshua might be the victim of child abuse, when the father's second wife complained to the police about his hitting Joshua. The Winnebago County Department of Social Services (DSS) interviewed Randy DeShaney but did not pursue the charges any further. In January and February of 1983, Joshua was admitted to the hospital with injuries that were the result of suspected child abuse. A DSS caseworker made monthly visits to the DeShaney home, during which time she observed numerous suspicious injuries to Joshua's head. The caseworker recorded these incidents in her file, along with her suspicions that someone in the DeShaney household was abusing Joshua physically, but she did nothing more. In November 1983, the emergency room notified DSS again that Joshua had been treated for suspicious injuries. On the caseworker's next two visits to the DeShaneys', she was told that Joshua was too ill to see her. In March 1984, Randy DeShaney beat Joshua so severely that he fell into a life-threatening coma. Emergen-

cy brain surgery revealed a series of hemhorrages caused by traumatic injuries to the head inflicted over a long period of time. Though still alive, Joshua has suffered brain damage so severe that he is expected to spend the rest of his life confined to an institution for the profoundly retarded. His father was subsequently tried and convicted of child abuse.

In their § 1983 action, Joshua and his mother urged that a "special relationship" existed between Joshua and the state by virtue of the latter's knowledge of the risk of abuse and its stated intention to protect Joshua, even though they conceded that the state had played no role in creating the danger that Joshua faced. *Id.* at 197. The Court, however, in reviewing cases in which it previously had found a due process violation, stated that they "afford petitioners no help", because they stand only for the proposition that the state has an affirmative duty to provide for the safety and well-being of those individuals, such as prisoners or mental hospital inmates, whom it takes into its custody and holds against their will. *Id.* at 199–200. The Court stated: "[i]n the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf . . . which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." *Id.* at 200.

The Court also stated that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by *private actors.*" *Id.* at 195 (emphasis added). Significantly, the Court further stated that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201. Under those circumstances, the Court held that the state had no constitutional duty to protect Joshua. *Id.*

III.

With the foregoing in mind, we turn now to the question whether appellants have implicated a constitutional violation.

### (A)

■ We first consider whether, in the wake of *DeShaney*, Gregory and Fields, if permitted to do so, can establish a right arising under the fourteenth amendment to be protected from harm. *Wells v. Walker, supra*, 852 F.2d 368. According to the district court's analysis here, the fact that the intoxicated individuals were not physically restrained is dispositive of their constitutional claim. We disagree. We believe that this case is sharply distinguishable from *DeShaney* in one very significant respect.

In this case, unlike in *DeShaney*, the state *did* do something to create a danger for Gregory and Fields and render them more vulnerable, i.e., a police officer took their designated driver from them. Gregory and Fields had taken the precaution of appointing a designated driver; by removing that driver, the state exposed the two passengers to grave danger, as the result of which one was killed and the other was seriously injured.

In *Freeman v. Ferguson*, 911 F.2d 52, 55 (8th Cir.1990), we explained that *DeShaney* left unclear "how large a role the state must play in the creation of danger and in the creation of vulnerability before it assumes a corresponding constitutional duty to protect." However, relying on *DeShaney*, we noted that "at some point such actions *do* create such a duty." *Id.* (emphasis added). In that case, we were faced with a situation in which appellant had alleged that her decedents met their violent and untimely deaths at the hands of her estranged husband, Norman "Bud" Downen, at a time when Downen was subject to a restraining order which appellees allegedly did not enforce. *Id.* at 53–54. The district court in that case, like the district court in the instant case, dismissed the complaint relying on *DeShaney*. *See id.* at 54.

At oral argument, appellant in *Freeman* alleged that Bud Downen had been a "close bosom buddy of the Police Chief," such that appellant "probably would be able to show that on occasions that [sic] some officers attempted to stop the conduct of Mr.

Downen but they were directed not to...." *Id.* at 54. We found that "such an allegation is distinguishable from *DeShaney*," because:

"[i]t presents a claim that the violence the decedents were subjected to was not solely the result of private action, but that it was also the result of an affirmative act by a state actor to interfere with the protective services which would have otherwise been available in the community—with such interference increasing the vulnerability of decedents to the actions of 'Bud' Downen and possibly ratifying or condoning such violent actions on his part."

*Id.* at 54. We held that appellant had raised the possibility that she could make out a constitutional claim, and we reversed the district court's dismissal order with directions that appellant be permitted to amend her complaint. *Id.* at 55.

In another post-*DeShaney* decision, the Ninth Circuit, in a case with facts similar to those in the instant case, held that appellant had presented genuine issues of material fact on the question whether a state trooper had deprived her of a liberty interest. *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989), *cert. denied*, 59 U.S.L.W. 3325 (1990). In that case, Trooper Ostrander pulled a car over, arrested the driver and impounded the car, and left the passenger, appellant Wood, near a military reservation in a high-crime area. *Id.* at 586. Appellant alleged that, after walking half a block toward her home, which was five miles away, and having turned down rides offered by three or four strangers, she accepted a ride with an unknown man who took her to a secluded area and raped her. *Id.*

Distinguishing the situation in *DeShaney* where the state " 'played no part' in creating the dangers," *id.* at 590, the Ninth Circuit held in *Wood* that appellant had "raised a triable issue of fact as to whether Ostrander's conduct 'affirmatively placed the plaintiff in a position of danger.' " *Id.* at 589–90 (citation omitted). The court held that "[t]he fact that Ostrander arrested [the driver], impounded his car, and

apparently stranded Wood in a high-crime area at 2:30 a.m. distinguishes Wood from the general public and triggers a duty of the police to afford her some measure of peace and safety." *Id.* at 590. The court held that Wood had raised a triable issue regarding Ostrander's knowledge of the danger.

The Eleventh Circuit, in *Cornelius v. Town of Highland Lake*, 880 F.2d 348 (11th Cir.1989), *cert. denied*, 110 S.Ct. 1784 (1990), also held that a right to be protected from harm could arise from state action exposing an individual to danger. *Id.* at 355. In that case, appellant was abducted by prison inmates working in a community work squad under the supervision of the state. *Id.* at 349–50. Distinguishing that case from *DeShaney*, the court stated that "[i]n this case, the defendants did indeed create the dangerous situation of the inmates' presence in the community by establishing the work squad and assigning the inmates to work around the town hall." *Id.* at 356. *See also Ross v. United States*, 910 F.2d 1422, 1431 (7th Cir.1990) (case distinguishable from *De-Shaney* where county policy cut off private sources of rescue without providing "meaningful alternative").

In *Wood, supra,* the court explicitly relied on a pre-*DeShaney* case, *White v. Rochford, supra.* In *White*, 592 F.2d at 382, the court held that police officers could not, with "constitutional impunity," abandon children and leave them in health-endangering situations after having arrested their custodian. The childrens' uncle was arrested for drag-racing on a busy Chicago highway; the officers left the children abandoned in the car on the side of the highway in the cold, the uncle's pleas for their aid notwithstanding. *Id.* The court held that the officers' refusal to lend aid to children "endangered by the performance of official duty" violated the due process clause. *Id.* at 383. The statement by Judge Tone has particular relevance here:

> "In the case at bar the children in the car had a federally protected right to be free from unjustified intrusions on their personal security by the police. Their personal security was under the protection of their uncle. *If that protection was removed and no alternate protection was provided, they would be exposed to danger* as occupants of an immobilized car on a highspeed expressway. *Arresting the uncle and thus removing their protection, and yet leaving the children exposed to these hazards, was an unjustifiable intrusion on the children's personal security.*"

*Id.* at 387 (Tone, J., concurring) (emphasis added).

In *Wells, supra,* we followed a line of cases holding that a constitutional deprivation can arise from private violence when the state affirmatively places a particular individual in a position of danger in which the individual would not otherwise have been. 852 F.2d at 370–71. Under that analysis, we held that the decedent had a right to be protected from harm inflicted by a released criminal, *id.* at 371, who had been released for transportation at the decedent's store, which also served as a bus station, without a warning to decedent that the released criminal was dangerous. *Id.* at 369.

Although *White* and *Wells* were decided prior to the Supreme Court's decision in *DeShaney*, the holdings in *Freeman, Wood,* and *Cornelius, supra,* convince us that a case like the instant one is still viable under § 1983, even in the wake of *DeShaney*. In the instant case, Officer Howell *created* the dangerous situation.

### (B)

■ We turn next to the question whether Fields and the Gregory Estate have adequately alleged that Officer Howell's conduct deprived Fields and Gregory of their right to protection within the meaning of the due process clause. That inquiry requires consideration of the level of conduct with which the officer is charged.

If appellees' alleged conduct, as a matter of law, were merely negligent, appellants would have no constitutional claim. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not

implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.") (affirming summary judgment in § 1983 case in which a prison inmate alleged that he slipped on a pillow negligently left on a staircase by a correctional deputy). In *Wells, supra,* although we held that the decedent had a protectible right under the fourteenth amendment, we held further that the defendants had not deprived her of that right by simply failing properly to screen the criminal and thus discover his propensity for violence—conduct which amounted to mere negligence. 852 F.2d at 371.

It also is clear that "an *intentional* deprivation of life, liberty and property interests by a state actor *does* state a cause of action under § 1983, and that 'intentional' actions include such culpable mental states as callous indifference." *Britt v. Little Rock Police Dep't,* 721 F.Supp. 189, 192 (E.D.Ark.1989) (emphasis added).

The parameters of § 1983 liability become fuzzier, however, when the conduct of a state actor falls into an intermediate category, such as gross negligence or recklessness. *Daniels, supra,* 474 U.S. at 334 n. 3 ("this case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause"); *Wells, supra,* 852 F.2d at 371 ("We are mindful that the Supreme Court in *Daniels* left open the possibility that 'something less than intentional conduct, such as recklessness or gross negligence,' is enough to trigger the protections of the [d]ue [p]rocess [c]lause' for purposes of a 42 U.S.C. § 1983 action. We are not required to explore that issue here because we conclude the descriptions of defendants' conduct in the complaint belie their characterization as anything other than ordinary negligence....") (citations omitted) (brackets added in *Wells*).

Previously, we have held that grossly negligent conduct, like merely negligent conduct, "does not state a claim under 42 U.S.C. § 1983." *Myers v. Morris,* 810 F.2d 1437, 1468-9 (8th Cir.1987); *see also Tall-*

*man v. Reagan,* 846 F.2d 494, 495 (8th Cir.1988) ("Tallman's complaint alleged at the most gross negligence on the part of appellees, which does not implicate the due process clause.") (affirming order of dismissal). As the Seventh Circuit has persuasively put it:

"Gross negligence blends into negligence; there is an indistinct and unusually invisible line between benefits exceeding the cost of precautions (negligence) and benefits substantially exceeding the costs (gross negligence). The malleable quality of these terms has produced scoffing among many, who see gross negligence as simply negligence 'with the addition of a vituperative epithet'....

... The distinction between negligence and gross negligence does not respond to the Due Process Clause."

*Archie v. City of Racine,* 847 F.2d 1211, 1219-20 (7th Cir.1988) (en banc), *cert. denied,* 109 S.Ct. 1338 (1989); *see also Britt, supra,* 721 F.Supp. at 189 (stating that if the question whether gross negligence could make out a § 1983 claim were open in this circuit, it would follow the reasoning in the *Archie* case).

As to recklessness, however, we agree with those courts that have held that this level of conduct is sufficient to make out a claim under § 1983. As the district court in *Britt* stated:

"Cases after *Daniels* ... have generally agreed that recklessness, which may be defined as 'intentionally doing an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow,' Prosser & Keeton, *Torts,* at 212, is sufficiently like intent that due process is implicated."

721 F.Supp. at 192; *see also Archie, supra,* 847 F.2d at 1220 ("'Recklessness' is a proxy for intent").

In the instant case, the Gregory Estate and Fields have raised questions of fact as to whether or not Officer Howell's conduct was reckless. For example, according to the deposition testimony of Officer Pollock, Officer Howell was informed by Turner that Gregory and Fields were intoxicated,

and yet Howell detained Turner without making any provision for Gregory and Fields. Shortly after Turner was detained, Officer Pollock received information over the radio from the dispatcher to be on the lookout for "this vehicle that had driven off from the station and that *the driver was probably going to be intoxicated.*" (emphasis added). Based on this evidence, a jury could conclude that Officer Howell deliberately left Gregory and Fields to their own devices in the Gregory vehicle, disregarding a grave risk that they would injure themselves as a result of driving while intoxicated. Summary judgment was inappropriate under such circumstances. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is inappropriate where "a reasonable jury could return a verdict for the nonmoving party."); *Cornelius, supra*, 880 F.2d at 353 n. 6 ("Whether the defendant's conduct rises to the level of culpability required to establish a deprivation of constitutional rights under § 1983 however, is a question for the jury."); *see also Wood, supra*, 879 F.2d at 588 (plaintiff raised triable questions of fact whether trooper's actions amounted to deliberate indifference towards plaintiff's safety). Appellees' claim here that the officer's conduct was not the proximate cause of the accident is likewise a jury question.

### (C)

Finally, we address the question of potential liability on the part of the City of Rogers. In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1977), the Supreme Court held that "[l]ocal governing bodies ... can be sued directly under § 1983 ... where ... the action that is alleged to be unconstitutional implements or executes a policy statement, regulation, or decision officially adopted and promulgated by that body's officers." Furthermore, local governments can be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690–91.

In the instant case, appellants have raised material questions of fact whether it was the custom of the Rogers Police Department that officers could use their discretion in deciding whether or not to arrest intoxicated individuals, despite the state statute requiring their arrest. In failing to detain Gregory and Fields, appellants claim that Officer Howell was acting in accordance with that custom. Accordingly, there are questions of fact with respect to the City's liability. *Bielevicz v. Dubinon*, 915 F.2d 845 (3d Cir.1990); *see also Ross, supra*, 910 F.2d at 1431 (plaintiff adequately alleged that county had a policy of arbitrarily cutting off private sources of rescue without providing a meaningful alternative).

### IV.

To summarize:

The district court erred in dismissing this § 1983 action. The Supreme Court's decision in *DeShaney* does not preclude a holding of a due process violation where the state intervenes to create a perilous situation. Under the facts of this case, Gregory and Fields, two intoxicated passengers, had a due process right to be protected from harm when a police officer, Officer Howell, intervened to remove their designated driver from them. There are questions of fact as to whether Officer Howell's conduct amounted to recklessness such as to have violated Gregory and Fields' constitutional rights, making summary judgment inappropriate. There also are questions of fact with respect to liability on the part of the City of Rogers.

Reversed and remanded for further proceedings consistent with this opinion.