Rickey COLLINS, Appellant,

v.

William Ray PRICE, Jr.,
et al., Defendants,

and

Darlene Smith and Robert Landzettel,
Respondents.

No. WD 42777.

Missouri Court of Appeals,
Western District.

June 18, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied
Sept. 10, 1991.

ORDER

PER CURIAM.

Movant appeals the dismissal of his Rule 24.035 motion for post-conviction relief.

**47**

Robert M. Sommers, Kansas City, for respondents.

Before NUGENT, P.J., and KENNEDY, GAITAN and WASSERSTROM, JJ.

GAITAN, Judge.

Plaintiff-appellant, Rickey Collins, filed this lawsuit under title 42 U.S.C. § 1983 (1988), seeking to recover for personal injuries he suffered as a detainee. The jury returned a verdict in favor of defendants, Darlene Smith and Robert Landzettel, both Kansas City, Missouri police officers. Members of the police board who were originally named defendants were removed as defendants as a consequence of a directed verdict, and no appeal to that action was taken. Appellant alleged the trial court erred by the submission of an improper jury instruction. We affirm the judgment.

On October 5, 1984, defendant Smith was on patrol in her police car when she was flagged down by two boys. The boys claimed to have been assaulted inside the Fun Time Arcade and one had a swollen eye and one a swollen lip.

Defendant Smith entered the Arcade as three juveniles ran out the back. She hollered to them to stop but they took off. She obtained a description of the alleged assailant and gave it to the dispatcher who broadcast it. Officer Fritzshall saw and detained appellant, and the victim identified him. Appellant, a thirteen year old, was taken to the juvenile unit in the police headquarters building.

Once in the juvenile unit, appellant was seated in a room and his handcuffs removed. This room was on the sixth floor of the police headquarters building. One pair of two sets of vertical folding or accordion styled windows was folded partially open and hooked in that position by a four inch hook.

Appellant testified he had never been to this particular location on the sixth floor of the police headquarters building. However, there was evidence that he had been to the juvenile unit two or three times before when it was located on the seventh

Robert L. Shirkey, Kansas City, for appellant.

floor. In fact, he had once been in a cell on the seventh floor.

Smith testified that when she arrived at the unit, appellant was "jumping up and down," meaning standing up, then sitting down in the chair and saying I didn't do it, I know who did, etc.... Landzettel came to the room from another area in response to the secretary's call. Smith was standing in front of the desk or at its side. Landzettel asked Smith what she had and she said she had picked up appellant in conjunction with a fight. Landzettel obtained appellant's name and stepped in to the adjacent office to get plaintiff's card from a file cabinet.

Smith got appellant's sister's phone number and tried to call. Appellant's parents did not have a telephone. As she dialed the phone the second time, out of her peripheral vision, she saw appellant rise from his chair. She had never left the room. She dropped the receiver, started toward appellant who was already in the window sill pushing the window further open. Appellant said "If you come any closer, I am going to jump."

Landzettel heard Smith say "Rickey, get down out of the window." He turned and saw appellant on the window sill. He came back into the room as appellant was lowering himself out the window. As appellant lowered himself, he was facing east holding the middle bar of the window. Landzettel went to the window and asked Rickey to come back in. Appellant said he'd rather go to hell than jail. Smith phoned the fire department. Landzettel started to reach for appellant but he threatened to turn loose. However, when Landzettel saw appellant's fingers start to slip he grabbed his left wrist with his right hand, but appellant slipped from his grasp.

Landzettel testified appellant was "hyperactive" meaning full of energy, antsy, upset at being there and fidgety, nothing unusual for a juvenile. There was nothing prior to the window incident to indicate he was psychologically unstable or anything other than normal. He knew of no claims that appellant had been mistreated or abused previously. He had no reason to believe appellant was drunk, suicidal, violent or about to become so, or had any psychological problems requiring more than counseling.

He did nothing to frighten or punish appellant. Never before had a juvenile attempted to jump from the unit. There was no contrary evidence. He had no reason to think appellant would try to escape or jump or otherwise try to hurt himself.

■ Appellant's main point on appeal concerns the question of jury instruction. However, the instructions which appellant complains about were his instructions. Appellant offered them and has thereby waived his right to complain. *Hardy v. Barbour,* 304 S.W.2d 21, 38 (Mo.1957).

Of more than passing concern to us is whether or not appellant made a submissible case. This is a civil action for damages under 42 U.S.C. § 1983 (1988). The United States Supreme Court has established two general requirements essential to any successful § 1983 action: The claimant must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived appellant of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (the court in *Williams* overruled *Parratt* not on the stated requirements of a § 1983 action, but because it allowed § 1983 liability for simple negligence).

In reviewing the submissibility of appellant's case under the two-step analysis of *Parratt,* there is no controversy that the first step, actions under the color of state law, has been met. It is not disputed that police officers, while engaged in their employment duties, are state actors. What is disputed, however, is whether appellant has met the second step of *Parratt* by showing conduct that deprived him of a federally protected right.

■ Appellant's theory of recovery under § 1983 is an alleged violation of the

Due Process Clause of the Fourteenth Amendment. Specifically, appellant argues that the officers' conduct brought about physical injuries that violated his right to "bodily integrity," a liberty interest protected by the Due Process Clause. *See White v. Rochford,* 592 F.2d 381, 383 (7th Cir.1979). A submissible case for a violation of Due Process requires (1) that appellant " 'possessed a right arising under the fourteenth amendment' " and (2) that the respondents' " 'conduct deprived [him] of [that right] within the meaning of the due process clause.' " *Gregory v. Rogers,* 921 F.2d 750, 752–53 (8th Cir.1990) (quoting *Wells v. Walker,* 852 F.2d 368, 369 (8th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989)). Essentially, the standards of submissibility in *Gregory* are a restatement, within the specific context of an alleged Due Process violation, of the more generalized second step of *Parratt.* Therefore, in evaluating appellant's case for submissibility under the second step of *Parratt,* we adopt the test in *Gregory* which was specifically created within the context of § 1983 actions alleging Due Process violations. *Gregory,* 921 F.2d at 752–53.

There is no doubt that "some degree of bodily integrity" has been recognized as a right arising out of the fourteenth amendment. *White v. Rochford,* 592 F.2d 381, 383 (7th Cir.1979); *see also Gregory v. Rogers,* 921 F.2d 750, 753 (8th Cir.1990). But it is uncertain whether appellant's injuries are within the "degree of bodily integrity" protected by the fourteenth amendment. We do not need to resolve this question, however, because appellant has clearly failed to make a submissible case as to the second prong of the *Gregory* test, that the respondents' *conduct* deprived him of a fourteenth amendment right *within the meaning of the due process clause. Id.* at 753 (emphasis added).

The continuum of conduct for state actors who deprive individuals of Due Process rights ranges from mere negligence to acts intended to deprive individuals of these rights. The United States Supreme Court has made it clear that, in terms of civil liability under § 1983, the due process clause is not applicable to negligent acts of an official causing unintended loss of or injury to life, liberty or property. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). The due process clause is intended to secure individuals from an abuse of power by government officials and does not create a right to sue officials because they negligently created an unsafe condition. *Id.* at 331–32, 106 S.Ct. at 665–66. Instead, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328, 106 S.Ct. at 663 (emphasis in the original).

■ At the other end of the spectrum of state conduct are acts intentionally designed to deprive the individual of Due Process rights. "It is ... clear that 'an *intentional* deprivation of life, liberty, and property interests by a state actor *does* state a cause of action under § 1983, and the "intentional" actions include such culpable mental states as callous indifference.' " *Gregory v. Rogers,* 921 F.2d 750, 756 (8th Cir.1990) (emphasis in the original).

As the Eight Circuit acknowledged in the *Gregory* opinion, however, conduct that falls between the extremes of negligence and intentional acts, such as gross negligence and recklessness, are somewhat "fuzzier" in terms of § 1983 liability. *Id.* Quoting from the Seventh Circuit Court of Appeals decision of *Archie v. Racine,* 847 F.2d 1211, 1219–20 (7th Cir.1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989), the court held that the distinction between simple negligence and gross negligence is too tenuous to allow civil liability under § 1983 for gross negligence. *Gregory,* 921 F.2d at 756. "[R]ecklessness, however, is sufficient to make out a claim under § 1983." *Id.* (citing *Britt v. Little Rock Police Dep't,* 721 F.Supp. 189, 192 (E.D.Ark.1989) ("recklessness ... is sufficiently like intent that due process is implicated"); and *Archie,* 847 F.2d at 1220 (" 'Recklessness' is a proxy for intent")).

The court in *Gregory* defined recklessness as " 'intentionally doing an act of an

unreasonable character in disregard of a known *or obvious risk* that was so great as to make it highly probable that harm would follow.'" 921 F.2d at 756 (quoting Prosser & Keeton, *Torts*, at 212) (emphasis added). Both appellant's petition and the submitted verdict directors alleged that respondents were liable under § 1983 because they acted with "deliberate indifference" to the safety of appellant. The instructions defined "deliberate indifference" as requiring actual knowledge of a risk.

Appellant contends that under the definition of recklessness approved in *Gregory,* which includes indifference to an obvious but unknown danger, the jury could have found that the officers were indifferent to an obvious risk, without finding indifference to a known risk. Appellant claims he was prejudiced because the *Gregory* standard was not available at the time appellant's case went to the jury. Accordingly, appellant asks us to remand the action to the trial court so that it can be resubmitted to the jury using the standards stated in *Gregory.*

We find no merit to appellant's argument. Ignoring the problems that *Gregory* was decided sixteen months after the present judgment and espoused a definition that is inapplicable to the theory of "deliberate indifference" submitted to the jury, appellant failed to make a submissible case as to recklessness, and thus any alleged error would be harmless.

■■■ "In determining the submissibility of a case we must consider the evidence in the light most favorable to [appellant] and must accord him the benefit of all supporting inferences fairly and reasonably deducible from the evidence." *Koehler v. Warren Skinner, Inc.,* 804 S.W.2d 780, 782 (Mo.App.1990). The record is void of any evidence from which the jury could deduce or infer that there was an "'obvious risk that was so great as to make it highly probable that harm would follow.'" *Gregory,* 921 F.2d at 756. It cannot be said that it was an "obvious risk" that appellant would attempt to climb out of a sixth floor window. Further, it was not unreasonable for the respondents to not take extraordinary precautions in preventing appellant's actions. *See generally Rellergert v. Cape Girardeau County,* 724 F.Supp. 662, 667

(E.D.Mo.1989), *aff'd,* 924 F.2d 794 (8th Cir. 1991) (holding that it is not unreasonable not to take extraordinary precautions to make a facility "suicide proof"). Therefore, the jury could not have found respondents reckless.

We do not believe that the Due Process Clause requires that police officers keep a sixth floor window padlocked shut for the unlikely reason that a pretrial detainee might injure himself while trying to escape. Nor does the Due Process Clause require that the pretrial detainee be physically restrained or monitored every second to prevent him from attempting to escape through an unsecured sixth floor window absent knowledge or obvious indications that this is likely to happen. Further, the Due Process Clause should not be extended to require police officers to protect detainees from injuring themselves while attempting to escape lawful custody, an illegal act under either state or federal law. *See* § 575.200 RSMo. (1986), and 18 U.S.C. § 751 (1988).

For the aforesaid reasons, plaintiff has failed to make a submissible case against defendants Smith and Landzettel under 42 U.S.C. § 1983 (1988).

All concur.